Jim Guy TUCKER, Governor, et al. *v.* LAKE VIEW
SCHOOL DISTRICT NO. 25 of Phillips County,
et al.

95-471                                   917 S.W.2d 530

Supreme Court of Arkansas
Opinion delivered March 11, 1996

*Winston Bryant*, Att'y Gen., by: *Tim Humphries*, Deputy Att'y Gen., for appellant.

*Mitchell, Blackstock & Barnes*, by: *Clayton R. Blackstock*, for *amicus curiae* Arkansas Education Ass'n.

ANDREE LAYTON ROAF, Justice. Appellants, Jim Guy Tucker, and others, appeal from an order of the Pulaski County Chancery Court which declared that the public school financing system then in effect violated the equal protection and education provisions of the Arkansas Constitution.

Appellants raise two points on appeal: the trial court erred by 1) misapplying the equal protection and education provisions of the Arkansas Constitution; and 2) incorrectly applying statistical measures of equity. As the ruling by the chancellor does not constitute a final appealable order, we dismiss the appeal.

### Facts

On September 19, 1994, appellees Lake View School District ("Lake View") and various of its students and patrons filed an amended complaint against Governor Jim Guy Tucker, the State Board of Education and its members, the State Treasurer, Speaker of the House of Representatives, Senate President Pro Tempore, and the Director of the Department of Education ("the State"). The complaint alleged that the system of school funding then in place violated the Arkansas constitutional guarantees of equal protection and of a general, suitable, and efficient system of education. The complaint also asserted that the funding system violated the equal protection and due process clauses of the Fourteenth Amendment to the United States Constitution. Lake View sought declaratory and injunctive relief, mandamus against the State to enact a constitutional system of school funding and to increase funding for public schools, nominal damages, attorney's fees, and costs.

After a trial on the merits before Chancellor Annabelle Clinton Imber, involving numerous witnesses and exhibits, the chancellor issued 147 findings of fact and eighteen conclusions of law on November 9, 1994.[1] She determined that the school fund-

---

[1] The chancellor entered an order on December 21, 1994, amending the findings of

ing system was constitutional under the United States Constitution and dismissed with prejudice Lake View's claims in that regard. However, she ruled that the funding system was in violation of the equal protection provision of the Arkansas Constitution, "as it has no rational bearing on the educational needs of the district," and that the system also violated the education provision of the Arkansas Constitution by "failing to provide a general, suitable, and efficient system of free public education." The chancellor stayed the effect of her decision for two years to allow the General Assembly time to enact and implement appropriate legislation in conformity with her opinion.

The General Assembly subsequently enacted new school funding statutes, Acts 916 and 917 of 1995, which effectively repealed the funding system at issue in this appeal.

There are three questions raised by the posture of this case and by the chancellor's decree which would all have to be answered in the affirmative for us to reach the merits of this case — whether the order entered by the chancellor was a final, appealable order, whether the chancellor had jurisdiction to hear the case, and whether the enactment of a new school funding system renders this matter moot. We conclude that there has been no final order entered in this action.

### Finality of Order

Because the chancellor stayed for two years the effect of her decision finding the school funding system unconstitutional, and declined to grant Lake View any of the specific remedies requested, we must consider whether the decision is a final, appealable order. This is a requisite for appellate jurisdiction, which we have a duty to determine. See *Walker* v. *Kazi*, 316 Ark. 616, 875 S.W.2d 47 (1994); *Chambers* v. *Manning*, 315 Ark. 369, 868 S.W.2d 64 (1993).

fact and denying Lake View's request for specific remedies and for the funding system to be set aside. However, Lake View's motion to modify the findings of fact was untimely pursuant to Ark. R. Civ. P. 52 and we determined this December 21, 1994 order to be a nullity. See *Tucker* v. *Lake View Sch. Dist.*, 321 Ark. 618, 906 S.W.2d 295 (1995). The State made a timely request to modify the findings of fact, and a separate valid order was entered December 21, 1994, pursuant to this request.

We first note that the question of whether the chancellor can stay the effect of her decision finding the statutes unconstitutional is not before us. The State does not raise this issue and Lake View has not filed a cross appeal or even a brief in this case.

■ For a judgment to be final and appealable, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy. *Kelly* v. *Kelly*, 310 Ark. 244, 835 S.W.2d 869 (1992); *Jackson* v. *Yowell*, 307 Ark. 222, 818 S.W.2d 950 (1991). To be final, an order must not only decide the rights of the parties, but also put the court's directive into execution, ending the litigation or a separable part of it. *Kilgore* v. *Viner*, 293 Ark. 187, 736 S.W.2d 1 (1987). *See also Bonner* v. *Sikes*, 20 Ark. App. 209, 727 S.W.2d 144 (1987).

The case primarily relied upon by the parties and the trial court on the questions of substantive law, *Dupree* v. *Alma School Dist. No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983), appears to be precisely on point and was also tried before a chancellor. However, the issue of finality was not presented by the chancellor's award of declaratory relief in *Dupree*. There, eleven school districts brought a class action suit against members of the Arkansas State Board of Education, charging, as in the present case, that the system of school financing then in effect violated the Arkansas Constitution's guarantee of equal protection and its requirement that the state provide a general, suitable and efficient system of education. The trial court declared the system to be in violation of the constitutional provisions in question, and this Court affirmed that decision. The opinion in *Dupree* does not indicate whether any further relief was sought by the appellee school districts, however, the effect of the trial court's order was not stayed, and the chancellor's decision granting declaratory relief was a final order.[2]

---

[2] *Dupree* was decided on May 31, 1983. "The School Finance Act of 1984," Act 34 of 1983 (Ex. Sess.), codified as Ark. Code Ann. §§ 6-20-301 — 319, (Repl. 1993), was approved on November 1, 1983 in a special legislative session. The emergency clause to the act provided that:

In view of the fact that the Arkansas school finance system, . . . has been invalidated by the Court; that the Court's ruling on this matter has been reviewed

■ Here, as in *Dupree*, the chancellor made a final determination that the school funding system was unconstitutional. However, she stayed the effect of her decision to allow the General Assembly to implement a constitutional system, and consequently did not consider the constitutionality of the individual elements of the system, nor did she address Lake View's requests for injunctive relief and mandamus. The chancellor's failure to grant the specific relief requested by the prevailing parties was in effect a deferral; she provided in her decree that the two-year stay was to "give the State of Arkansas time to enact and implement appropriate legislation in conformity with this opinion." By the terms of the decree, Lake View could request further hearings at the end of two years to determine if the new funding system conforms to the chancellor's ruling, or had the State failed to take any action at all. Lake View's rights in this matter have not been concluded and they have no way to put the chancellor's directive into execution without further proceedings before the trial court; the requirements for finality are thus not met.

### Jurisdiction and mootness

■ Because we dismiss this appeal for lack of a final order, we need not reach the issues of whether the chancellor had jurisdiction to hear the case, or whether the enacting of a new funding system has rendered this matter moot. However, we point out that the matter of jurisdiction may again arise if further proceedings before the trial court result in another appeal of this case. The issue of subject-matter jurisdiction, like that of finality, is one that we raise on our own motion. *Villines* v. *Lee*, 321 Ark. 405, 902 S.W.2d 233 (1995). As to mootness, we note that repeal of the funding system declared unconstitutional does not become effective until July 1, 1996. Act 917 of 1995,

and upheld by the State's Supreme Court; that state funds for the support of the state's public elementary and secondary schools are now being allocated and distributed under a system which has been declared unconstitutional; and that there is a pressing need to implement a constitutional system of school finance for Arkansas schools at the earliest possible date. Therefore, an emergency is hereby declared to exist and this Act, being necessary for the immediate preservation of the public peace, health and safety, shall be in full force and effect from and after January 1, 1984.

§ 15(b).

Appeal dismissed.

GLAZE, J., concurs, and BROWN, J., dissents.

TOM GLAZE, Justice, concurring. I concur. The chancellor's decree clearly runs afoul of Ark. R. App. P. 2, and is not an appealable order. The chancellor declared the Arkansas school funding system (School Finance Act of 1984) unconstitutional under Article II, § § 2,3, 18 and Article XIV, § 1 of the Arkansas Constitution, but she never put her directives into execution. The plaintiff school district filed suit, asking the trial court to declare Arkansas's statutory funding structure unconstitutional and requesting the State Board of Education be enjoined from implementing that unlawful funding structure. Although the chancellor decreed Arkansas's educational funding laws were unconstitutional, she denied plaintiffs any remedies, and instead stayed the effect of her decision for two years to give the General Assembly time to implement a school funding system in conformity with her opinion. The chancellor further stated the following:

> The court has declared the Arkansas school funding "system" unconstitutional. *At this point in time*, the court will not consider the constitutionality of the individual elements of the "system." (Emphasis added.)

Exactly where the chancellor's decree left the prevailing plaintiffs is unclear, since plaintiffs were unable to enforce their rights under the trial court's declaration. Apparently, plaintiffs must wait two years at which time the chancellor would decide if the General Assembly had adopted and implemented a school funding system which complied with her decision. Apparently, when the two-year period ends, another hearing would be required to review any new law to determine if conformity was achieved.

Our court has held that, to be final and appealable, a trial court's order, decree or judgment must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy. *Estate of Hastings* v. *Planters and Stockmen Bank*, 296 Ark. 409, 757 S.W.2d 546 (1988). This court also related the rule that a final judgment or

decision is one that finally adjudicated the rights of the parties, putting it beyond the power of the court which made it to place the parties in their original positions. It must be such a final determination as may be enforced by execution or in some other appropriate manner. Here, the chancellor's decree meets none of the foregoing requirements, since the parties are still before the trial court, and the plaintiffs must wait to enforce their rights. That being so, I would dismiss this appeal, because no final order exists.

In conclusion, I take exception to the majority opinion wherein it concludes the question of whether the chancellor can stay the effect of her decision is not before this court. Sure it is. The chancellor's action staying its decision for two years is part of the reason why the judgment is not final and failed to grant any remedies. In addition, I would state the subject-matter jurisdiction issue is not clear to me, especially since mandamus was requested by the plaintiffs and that relief must be sought in circuit court. Thus, I reserve my opinion on this issue. Concerning the mootness issue, however, I see no merit. I merely point out that the School Finance Act of 1984 which the chancellor declared unconstitutional (effective in two years) is not, as yet, repealed. In fact, Act 917 of 1995 (the Equitable School Finance System Act) mentioned in the majority opinion does not repeal the 1984 Act until July 1, 1996. Nor is it clear at this juncture whether Act 917 cures those constitutional infirmities that the chancellor says exist in the 1984 Act. In sum, the parties have not benefited us with a comparison of these laws or offered an argument that Act 917 caused this litigation to be moot. Based on what is before this court now, mootness is not shown.

I respectfully join in the result reached by the majority on the finality issue and find it reason enough to dismiss.

ROBERT L. BROWN, Justice, dissenting. This case involves approximately $1 billion in Minimum Foundation Program Aid funds for education. About 435,000 students in Arkansas are affected. The chancellor's judgment declaring the school funding program unconstitutional, as it existed in 1994, was entered November 9, 1994. That declaratory judgment was immediately appealed by the State. Now, almost a year and a half later the majority declines to entertain the appeal because it concludes

that the declaratory judgment was not a final order. The majority further suggests that jurisdiction in chancery court may be faulty, but it makes no decision on that point.

I would hold that jurisdiction of this matter properly lies in chancery court and that the declaratory judgment is final for purposes of appeal and for this court's review. For that reason, I dissent.

## I. Final Order

It is statutory law in Arkansas that declaratory judgments shall have the effect of a final judgment:

> (a) Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.
>
> . . . .
>
> (2) The declaration may be either affirmative or negative in form and effect and *declarations shall have the force and effect of a final judgment or decree.*

Ark. Code Ann. § 16-111-103(a)(2) (1987). (Emphasis added.)

The Commentary to the Declaratory Judgment Act supports this notion:

> The Declaratory Judgment may be either affirmative or negative in form and effect; it may determine some right, privilege, power or immunity in the plaintiff, or some duty, no-right, liability or disability in the defendant. The judgment is not based on any wrong already done or any breach committed. *It is not required to be executed, as it orders nothing to be done.* It simply declares rights and duties so that parties may guide themselves in the proper legal road, and, in fact, and in truth, avoid litigation.

Prefatory Note to Ark. Code Ann. § 16-111-101 *et seq.* (Repl. 1995). (Emphasis added.)

Here, the chancellor declared the school funding formula unconstitutional as violative of the Equal Protection Clause of the Arkansas Constitution. That declaration of rights had the

force and effect of a final judgment. The chancellor then refrained from granting any supplemental relief to execute the judgment for two years in order to give the General Assembly a chance to come into compliance with her order. In staying the effect of her order, she cited as authority *Helena Elementary School Dist. 1* v. *State*, 784 P.2d 412, 413 (Mont. 1990); *Carrollton-Farmers* v. *Edgewood Indep. School Dist.*, 826 S.W.2d 489 (Tex. 1992); and *Edgewood Indep. School Dist.* v. *Kirby*, 777 S.W.2d 391, 399 (Tex. 1989). The reason for doing this is obvious. Had she immediately enjoined an expenditure of State funds under the program, public education would have come to an abrupt halt absent an appeal.

What the chancellor did in declaring rights and staying her order is precisely what virtually every other jurisdiction has done when considering a similar issue. In none of these cases has the appellate court dismissed the matter for lack of finality. For example, the District Court which invalidated Texas's school finance system in 1971 allowed the legislature two years to take corrective action. *Rodriguez* v. *San Antonio Indep. Sch. Dist.*, 337 F. Supp. 280 (W.D. Tex. 1971), *rev'd on other grounds*, 411 U.S. 1 (1973). A California trial court also set a period of six years from the date of judgment as a reasonable time to rectify an unconstitutional school funding system, and the California Supreme Court affirmed. *See Serrano* v. *Priest*, 18 Cal.3d. 728, 135 Cal. Reptr. 345, 557 P.2d 929 (1977), *cert. denied sub. nom. Clowes* v. *Serrano*, 432 U.S. 907 (1977).

Likewise, in *Robinson* v. *Cahill*, 62 N.J. 473, 303 A.2d 273 (1973), *cert. denied sub. nom. Dickey* v. *Robinson*, 414 U.S. 976 (1973), the New Jersey Supreme Court agreed with the trial court that a period of time was necessary to allow the legislature an opportunity to come into compliance with constitutional mandates. A specific deadline for compliance was fixed by the court. *Robinson v. Cahill*, 63 N.J. 196, 306 A.2d 65 (1973) (per curiam), *cert. denied sub. nom. Dickey* v. *Robinson*, 414 U.S. 976 (1973). In the first *Robinson* case, the court made the case for a stay:

> We agree with the trial court that relief must be prospective. The judiciary cannot unravel the fiscal skein. Obligations incurred must not be impaired. And since govern-

ment must go on, and some period of time will be needed to establish another statutory system, obligations hereafter incurred pursuant to existing statutes will be valid in accordance with the terms of the statutes.

303 A.2d at 298.

State appellate courts have also modified trial court orders to provide for stays to give legislatures time to act in comparable situations. *Rose* v. *Council for Better Educ., Inc.*, 790 S.W.2d 186 (Ky. 1989) (withheld finality of judgment until 90 days after the adjournment of the General Assembly at its regular session); *Washakie County Sch. Dist. No. 1* v. *Herschler*, 606 P.2d 310 (Wyo. 1980), *cert. denied sub. nom. Hot Springs County Sch. Dist. No. 1 v. Washakie County Sch. Dist. No. 1*, 449 U.S. 824 (1980) (court ordered that the conversion be in effect and underway not later than July 1, 1982); *Seattle Sch. Dist. No. 1* v. *State*, 90 Wash.2d 476, 585 P.2d 71 (1978) (en banc) (opinion deemed all acts taken under existing statute valid until July 1, 1981); *Horton* v. *Meskill*, 172 Conn. 615, 376 A.2d 359 (1977) (stayed judicial intervention to afford the General Assembly an opportunity to take appropriate legislative action).

By dismissing this appeal, the constitutionality of school funding is placed in limbo with nothing resolved. Presumably, as of November 9, 1996, the chancellor's opinion will be final in the majority's eyes. What happens then? The State could refile the same appeal, but a considerable period of time will have been lost in reviewing the chancellor's order.

## II. Mootness

The General Assembly has passed school-funding legislation since the chancellor's order. *See* Act 917 of 1995. We have said that when one act has been superseded by a second act, we generally dismiss an appeal from a declaratory judgment action construing the first act for mootness. *Nathaniel* v. *Forrest City School Dist. No. 7*, 300 Ark. 513, 780 S.W.2d 539 (1989). The *Nathaniel* case was an election matter, and we went on to say in our opinion that when an issue is capable of repetition, even though moot, we will entertain it. We concluded that *Nathaniel* presented such a case, and we addressed the merits. We have further stated:

> [W]hen the case involves the public interest, or tends to become moot before litigation can run its course, or a decision might avert future litigation, we have, with some regularity, refused to permit mootness to become the determinant (citing authority).

*Campbell* v. *State*, 300 Ark. 570, 572, 781 S.W.2d 14, 15 (1989). Thus, when matters of great public interest are involved that might arise in the future, we have decided them even though the precise matter on appeal is moot. *Dotson* v. *Ritchie*, 211 Ark. 789, 202 S.W.2d 603 (1947).

The matter presently before us is arguably moot because the General Assembly has passed a new school funding law in the form of Act 917. However, the issue that remains is whether the chancellor was correct in her analysis of what a school funding formula must provide to pass constitutional muster. That issue is before this court in this appeal, and it is left hovering in the air by today's decision. There may well be a second lawsuit by the Lake View School District to decide whether Act 917 complies with the chancellor's order. (Compliance of Act 917 with the chancellor's order has not been raised in this appeal.) However, a second lawsuit on compliance would necessarily have to include whether the chancellor's reasoning in her declaratory judgment was right. I would decide that issue in this appeal.

Education receives high priority status under the Arkansas Constitution, as it should:

> Intelligence and virtue being the safeguards of liberty and the bulwark of a free and good government, the State shall ever maintain a general, suitable and efficient system of free public schools and shall adopt all suitable means to secure to the people the advantages and opportunities of education.

Ark. Const. art. 14, § 1. I would treat this case as the matter of high public interest that it is and review the merits of the chancellor's decision. To do otherwise runs the risk of causing delay and fomenting uncertainty and instability in the educational system.

### III. Jurisdiction

Jurisdiction in chancery court has been questioned by the majority opinion, but no resolution of the matter has been made. I believe that chancery court had jurisdiction of this case. Mandamus is clearly a legal remedy, but it is supplemental relief, as already discussed. A declaration of rights concerning an illegal application of State funds and injunctive relief fall readily in chancery's domain. *See, e.g., Hartwick* v. *Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989); *DuPree* v. *Alma School Dist. No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983). The upshot of today's opinion is to place in doubt chancery's jurisdiction over this case while leaving a decision on the matter to another day. Having not addressed the jurisdictional point in connection with the present appeal, it would be unfair in the extreme to dismiss a subsequent, related appeal emanating from chancery court for lack of jurisdiction.

### IV. Summary

To summarize, I would hold that the jurisdiction of this matter appropriately lies in chancery court. I would further view the declaratory judgment as final for purposes of our review. And, lastly, though superseding legislative action in 1995 may have rendered the constitutionality of the previous formula moot, the chancellor's analysis is the polestar against which Act 917 of 1995 must ultimately be measured. I would decide whether that analysis missed the mark or correctly assessed constitutional mandates. For that reason, I respectfully dissent.