LAKE VIEW SCHOOL DISTRICT No. 25
of Phillips County, Arkansas, *et al. v.*
Mike HUCKABEE, Governor
of the State of Arkansas, *et al.*

99-28                                    10 S.W.3d 892

Supreme Court of Arkansas
Opinion delivered March 2, 2000
[Petitions for rehearing denied April 13, 2000. * ]

---

* IMBER, J., not participating.

482

*Wilson & Valley,* by: *J.L. Wilson; Lewellen & Associates; Don Trimble;* and *Jack, Lyon & Jones, P.A.,* by special attorney *Eugene G. Sayre,* for appellants.

*Mark Pryor,* Att'y Gen., by: *Tim Humphries,* Senior Ass't Att'y Gen.; and *Thompson and Llewellyn, P.A.,* by: *William P. Thompson and James M. Llewellyn, Jr.,* for appellees.

*Lavey & Burnett,* by: *John L. Burnett,* for *amicus curiae* American Civil Liberties Union.

ROBERT L. BROWN, Justice. The original plaintiffs in this case, now appellants, are Lake View School District No. 25 of Phillips County, Arkansas and School District board members and officials, and certain individuals residing in Phillips County (hereafter Lake View). The defendants, now appellees, are the Governor of the State of Arkansas, the Treasurer of the State of Arkansas, the Speaker of the House of Representatives and President Pro Tempore of the Senate of the Arkansas General Assembly, officers of the Arkansas Department of Education, and members of the Arkansas Board of Education (hereinafter State of Arkansas). In this appeal, Lake View raises multiple substantive issues relating to the final order of the chancery court, which dismissed the Lake View complaint, and its petition to show cause for contempt on grounds of mootness and failure to state a claim under Ark. R. Civ. P. 12(b)(6). Lake View further appeals the chancery court's denial of attorneys' fees. We hold that two bases for the Lake View appeal have merit. The trial court erred in dismissing Lake View's complaint and show-cause petition for mootness and for failure to state a claim. It also erred in denying attorneys' fees.

## I. Procedural History

The history of this case is long and tortured, but reviewing the history is critical to the resolution of the matter. On August 19, 1992, Lake View filed suit against the State of Arkansas, in which it contested the constitutionality of the public school funding system under both the U.S. Constitution and the Arkansas Constitution. Lake View requested that the chancery court declare the school funding system unconstitutional and that the court enjoin implementation of the unconstitutional system. This complaint subsequently was amended five times. The second amended complaint was tried before the chancery court for five days in September 1994. Following trial, the chancery court entered its order on November 9, 1994. The order was fifty-two pages long, and it contained one hundred and forty-seven findings of fact and eighteen conclusions of law.

What was at issue in the Lake View case was the disparity in funds available for education in school districts across the state under the school funding system. In 1994, school districts received approximately thirty percent of their revenue from local funds, sixty percent from state aid, and ten percent from federal funds. Local funds were tied to the local tax base which was tied to property values within the districts. School districts with higher property values necessarily generated higher local taxes and more money available for education. This resulted in significant disparities. As an example, disparities in per pupil expenditures in the 1992/93 school year ranged from $4,064 spent per pupil in the Little Rock School District to $2,270 spent per pupil in the Mountain View School District. One of the purposes of state aid was to equalize per pupil expenditures regardless of the wealth of the school district and to make available equal educational opportunities for all students. *See Dupree v. Alma School District No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983).

In its November 9, 1994 order, the chancery court concluded that the equal protection provisions of the Arkansas Constitution (Article 2, §§ 2, 3, 18) applied to Arkansas school funding and that there was no rational basis for the disparity in available school funds among poor and wealthy school districts under Arkansas's school funding system. The court further concluded that the school funding system violated Article 14, § 1, of the Arkansas Constitution by

failing to provide a "general, suitable and efficient system of free public schools." Two problems were pointed out by the 1994 Order: (1) school districts were allowed to keep excess tax revenues raised locally, thereby producing funding variances; and (2) state aid under Act 1 of 1994 did not cure the disparities in per pupil expenditures.

The chancery court stayed the effect of its decision for two years to give the Arkansas General Assembly time to implement a constitutional system "in conformity with this opinion." On December 21, 1994, the chancery court modified its first order slightly with two additional orders and repeated the two-year stay to give the General Assembly an opportunity to enact a constitutional system "in conformity with this opinion." The court also cited authority from other states as support for its stay.[1] The three orders will be referred to in this opinion as the 1994 Order.

On March 6, 1995, the chancery court refused to award Lake View attorneys' fees, because no common fund had been established as a result of counsels' efforts. Also, in 1995, the General Assembly passed three acts in an attempt to comply with the 1994 Order:

- Act 916 — Levied an income tax surcharge of ten percent against residents in a school district which failed to pass the base millage for school funding.[2]

- Act 917 — Repealed the old funding system; required the Board of Education to review minimum standards of accreditation and develop a definition for what constitutes an adequate education; and required that all school districts levy the base millage and that the State Treasurer supplement school district revenues to meet the base millage level.

- Act 1194 — Appropriated funds for grants and aids to local school districts, special programs, and vocational technical education for the biennium.

---

[1] The chancery court cited *Carollton-Farmers v. Edgewood Indep. School Dist.*, 862 S.W.2d 489 (Tex.1992); *Helena Elementary School Dist. 1 v. State*, 784 P.2d 412 (Mont. 1990); *Edgewood Indepen. School Dist. v. Kirby*, 777 S.W.2d 391 (Tex. 1989).

[2] This court subsequently found Act 916 of 1995 unconstitutional on other grounds. *See Barclay v. Melton*, 339 Ark. 362, 5 S.W.3d 457 (1999).

Hereinafter in this opinion, the three acts will be referred to as the "1995 legislative acts."

On March 11, 1996, this court dismissed an appeal by the State of Arkansas, which had contested the constitutional bases of the 1994 Order and its statistical analysis of equity. *See Tucker v. Lake View Sch. Dist. No. 25*, 323 Ark. 693, 917 S.W.2d 530 (1996). In that case, we held that because the chancery court stayed the effect of its order for two years to give the General Assembly an opportunity to act in conformity with the 1994 Order, this constituted a deferral by the chancery court in granting relief. We concluded that there was no final order for our review:

> By the terms of the [1994 Order], Lake View could request further hearings at the end of two years to determine if the new funding system conforms to the chancellor's ruling, or had the State failed to take any action at all. Lake View's rights in this matter have not been concluded and they have no way to put the chancellor's directive into execution without further proceedings before the trial court; the requirements for finality are thus not met.

*Tucker*, 323 Ark. at 697, 917 S.W.2d at 533.

In 1996, Lake View filed its third and fourth amended complaints. In the third amended complaint, Lake View asked for a declaration that Act 917 of 1995 was unconstitutional under the Arkansas Constitution's equal protection article (Article 2) and its general education article (Article 14). The fourth amended complaint repeated allegations that Acts 916 and 917 of 1995 were unconstitutional and requested class certification of all generally affected persons in the state. On August 22, 1996, the chancery court certified the class of affected persons as all school districts in the state, students and parents of students in all school districts, school board members of all school districts, and school district taxpayers who have paid taxes to support the public school system.

On August 13, 1996, the chancery court entered a scheduling order which included the setting of a trial "on compliance with this Court's previous orders" to be held over seven days in November 1996.

On November 5, 1996, Amendment 74 to the Arkansas Constitution was passed by a vote of the people. This amendment

amended Article 14, § 1, of the Arkansas Constitution and provided a base millage rate of twenty-five mills for all school districts. It further specifically allowed variances in funding among the school districts and authorized school districts to levy additional taxes above the base millage rate for maintenance and operation.

On November 18, 1996, the chancery court entered three orders in which (1) the judge of the chancery court who heard the case in 1994 and entered the 1994 Order recused; and (2) the court postponed the compliance trial because the seven days allotted would not be sufficient time to conduct the trial.[3] In a third order, the chancery court found:

> 2. The Arkansas Assembly enacted Acts 916 and 917 in 1995 to establish a new school funding system. A presumption exists that Acts 916 and 917 are constitutional.
>
> 3. Plaintiffs have the burden of going forward with the evidence and the burden of proving that the newly enacted school funding system is unconstitutional.
>
> 4. The enactment of a new school funding system and new statistical data constitute new facts. Therefore, the doctrine of *the law of the case* is not applicable, and the scope of the trial will not be limited to those issues raised at the previous trial of this cause. Nor will the trial be limited to compliance with this Court's previous order.
>
> 5. The scope of the trial will be affected and controlled by the pleadings file (sic) by the parties in this cause.

The case was then reassigned to a new judge of the chancery court.

On December 2, 1996, Lake View petitioned the chancery court for a writ of mandamus directing that this matter be set down for a full hearing on whether the State of Arkansas had complied with the 1994 Order and for a declaratory judgment. No immediate action was taken on that motion.

In April of 1997, Act 1307 of 1997 and Act 1361 of 1997 (hereinafter the "1997 legislative acts") became law. Act 1307

---

[3] Judge Annabelle Clinton Imber assumed a position on the Arkansas Supreme Court in January 1997.

amended or repealed the former school funding system. It further set out the calculations of what millages may be used to meet the base millage rate of twenty-five mills and set out a system for public school revenues and expenditures, including what a general, suitable, and efficient system of education should include. Act 1361 appropriated funds for grants and aids to local school districts and for special programs for the next biennium.

On May 29, 1997, Lake View filed a fifth amended complaint in which it contested the constitutionality of the 1995 and 1997 legislative acts under Article 2 (equal protection) and Article 14 (general education) of the Arkansas Constitution and the Fourteenth Amendment of the U.S. Constitution and prayed that the chancery court declare that the State of Arkansas is violating the 1994 Order. On June 6, 1997, the State of Arkansas moved for a dismissal of the *fourth* amended complaint under Rules 8(a) and 12(b)(6) of the Arkansas Rules of Civil Procedure.[4] On June 12, 1997, the chancery court entered a scheduling order in which it set a deadline of August 14, 1997, for Lake View to file further amendments to the complaint. On August 20, 1997, Lake View filed a motion to extend the filing time for a new complaint, and on September 5, 1997, the chancery court denied the motion as untimely. On September 8, 1997, Lake View filed a sixth amended complaint praying that the 1995 and 1997 legislative acts be declared unconstitutional "under federal and state standards." The State of Arkansas moved to strike the sixth amended complaint as untimely.

On October 30, 1997, the chancery court struck the sixth amended complaint and noted that there had been no "substantive strides" in the case since the order denying attorneys' fees on March 3, 1995. The court set a trial for January 27, 1998, through February 8, 1998. It also allowed Lake View ten days to cure conclusory allegations in its fifth amended complaint. On November 3, 1997, the chancery court allowed Lake View until November 21, 1997, to comply with the October 30, 1997 order or to file "some other pleading under which the plaintiffs wish to proceed." On November 21, 1997, Lake View filed an eighteen-page petition to show cause why the State of Arkansas should not be held in contempt of

---

[4] The motion was later amended to reference the fifth amended complaint.

court for failure to comply with the 1994 Order. In that petition, Lake View measured the 1995 and 1997 legislative acts and Amendment 74 against the yardstick of the 1994 Order and asked the chancery court to order the State to provide it with financial information regarding public school funding, after which the court should hold the State in contempt for noncompliance. On December 5, 1997, the State of Arkansas moved to dismiss Lake View's petition to show cause under Rule 8(a) and 12(b)(6) of the Arkansas Rules of Civil Procedure.

On January 29, 1998, counsel for the State of Arkansas and Lake View presented the chancery court with an Agreed Order approved by all counsel, including the Office of the Arkansas Attorney General. The salient parts of the Agreed Order were:

- A pool of money has been created by the efforts of Lake View. Since the 1994 Order, there has been an increase in funding of at least $65 million in each of the fiscal years 1996-97 and 1997-98, totaling approximately $130 million.

- The parties agree that upon application of Lake View the chancery court may order reasonable attorneys' fees and costs to be paid.

- Upon resolution of the attorneys' fees and cost issue, Lake View shall dismiss this case with prejudice.

- Dismissal of the case with prejudice shall act as a bar to all claims by the Lake View class and interveners that the 1995 and 1997 legislative acts violate the federal or state constitutions or federal or state statutes.

On February 2, 1998, Lake View filed a petition for attorneys' fees in which it requested a fee award of $10.25 million or, alternatively, fifteen percent of $130 million.

On February 5, 1998, an order approving notice to class members was signed by the chancery court, calling for a fairness hearing on the proposed Agreed Order. Depositions of two practicing attorneys, Carrold E. Ray and Richard F. Hatfield, who favored payment of the requested attorneys' fees, were taken and filed with the court.

On February 20, 1998, the American Civil Liberties Union filed an objection to the Agreed Order based on the brevity of the

comment period and the dismissal by class representatives of all claims regarding the constitutionality of the 1995 and 1997 legislative acts. According to the ACLU, class members were receiving nothing substantive from the settlement. The Little Rock School District and the Pulaski County Special School District also objected to payment of attorneys' fees from funds allocated to their respective districts. Dr. Winston Simpson of the Bryant School District disagreed that $130 million resulted from Lake View's efforts. On March 25, 1998, the State of Arkansas responded to the various objections and urged the chancery court to sign the Agreed Order. The State pointed out that what was before the court was an Agreed Order by the parties and not a settlement agreement.

The State of Arkansas also filed a prehearing brief which included an argument that the State of Arkansas had complied with the 1994 Order by enacting the 1995 and 1997 legislative acts. Amendment 74 had also passed as well. The State's brief advised the chancery court that support for the Agreed Order was almost universal among class members, and a transcript of a Legislative Council meeting held on January 29, 1998, was attached in which the full Legislative Council approved the Agreed Order. During the Legislative Council's meeting, Tim Humphries of the Attorney General's office stated that the Governor directed the Attorney General to "pursue with the settlement."

On March 20, 1998, and April 1, 1998, hearings were held before the chancery court on matters relating to the Agreed Order. At the March 20, 1998 hearing, the court noted that it had "great concern" about barring future litigation under the Agreed Order. At the April 1, 1998 hearing, the chancery court found that the ACLU had standing. The chancery court then refused to approve the Agreed Order. In doing so, the court alluded to its concern about barring future litigation. With respect to Lake View's counsel, the court stated that they had performed a "historic service"and need to be "paid handsomely." It was their efforts, according to the court, that led to the State's "getting a fair school funding formula in place." The court urged the parties to settle the attorneys' fees issue. It concluded that if the court could award fees, it would, though it bothered the court that school districts that did not benefit from the lawsuit might have to pay part of the fees. After the ruling, counsel for the State of Arkansas announced that the State stood by the Agreed Order and that the case involved whether the

State had complied with the 1994 Order by enacting the 1995 and 1997 legislative acts and with the passage of Amendment 74.

On April 3, 1998, Lake View requested the chancery court to determine reasonable attorneys' fees and "adjudicate the matter in its finality." On April 6, 1998, a hearing on attorneys' fees occurred before the chancery court in which the court repeated that Lake View's counsel "need to be rewarded." Counsel for the State of Arkansas contended that the 1994 Order was moot but affirmed the Agreed Order recitation that a $130 million fund was created by Lake View's efforts. Counsel for the Little Rock School District argued that the 1994 Order was moot owing solely to the fact that a new school funding system was now in place. The chancery court announced the figure of $7 million as attorneys' fees for purposes of notifying the class members of a settlement.

On April 9, 1998, the Attorney General's office for the State of Arkansas raised objections to attorneys' fees for Lake View. At an April 10, 1998 hearing, the trial court referred to an "immunity argument" that the Attorney General had raised. Also on that date, the chancery court approved an order of notice to the class of an award of attorneys' fees in the amount of $7 million. The notice provided that after payment of the fees, the case would be dismissed as moot. Numerous comments from class members were received, both opposed to and in favor of the settlement, though the majority of comments opposed the proposed fee for attorneys.

On May 22, 1998, a hearing was held on Lake View's request for attorneys' fees. Bill Goodman, assistant director for tax and fiscal research of the Legislative Council, testified that Act 917 of 1995 was enacted in response to the 1994 Order and that general revenue surpluses were realized in fiscal years 1994-95, 1995-96, and 1996-97. Michael Stormes, Administrator of the Office of Budget of the Department of Finance and Administration, also testified about surpluses for the last three fiscal years and stated that the State of Arkansas had a $20 million fund for payment of unanticipated claims against the State. Dr. Charles Venus, a consulting economist and member of the Governor's Council of Economic Advisors, testified that over the last five fiscal years, underfunded school districts had received considerable funds as a result of Lake View's efforts and the 1994 Order. Dr. Venus took issue with the position of Tristen Green, systems coordination analyst for the Department

of Education, that any benefit derived from the Lake View lawsuit was minimal. According to Dr. Venus, the increased funds received by the poorer school districts since 1994 was considerable.

On June 8, 1998, the State of Arkansas responded to Lake View's letter briefs on attorneys' fees, urged that both the American Rule and sovereign immunity prevented payment of any fees, and asked the chancery court to cut off further argument on the matter. On June 12, 1998, Lake View tendered its reply to the State's assertion of sovereign immunity.

On August 17, 1998, the chancery court entered its final order on the matter. It found that Lake View's fourth amended complaint and show-cause petition were moot because Amendment 74 had changed the standard for the school funding system and allowed funding variances among the school districts. The court stated that the same analysis applies to the legislation passed by the General Assembly in 1995 and 1997. The court added that the complaint and show-cause petition should be dismissed for failure to state a claim, because the 1995 and 1997 legislative acts are presumed constitutional and no facts were alleged supporting lack of a rational basis for those acts.[5] In this regard, the chancery court noted that Lake View's show-cause petition did assert that findings made in the 1994 Order were violated, but concluded that those findings *"[m]ay necessarily have changed and *may not be*applicable today."* (Emphasis ours.)

With respect to burden of proof, the chancery court stated that the State of Arkansas had the burden of proving that it had complied with the 1994 Order, but that the 1995 and 1997 legislative acts were presumed constitutional. According to the court, this meant that Lake View had the burden of proving that "there is no rational basis for the current legislation." The chancery court added: "Because the new statutes and constitutional amendment could be construed by the Court as a response to the 1994 Orders, the Orders themselves provide a rational response for the new funding formula."

---

[5] The chancery court specifically found that Lake View's show-cause petition was a "pleading" as contemplated by its previous order.

Regarding attorneys' fees, the chancery court rejected Lake View's legal theories for paying fees (1) under the Arkansas Civil Rights Act, (2) under a theory of illegal exaction, and (3) under the common-fund or common-benefit theories. It further concluded that sovereign immunity under Article 5, § 20, of the Arkansas Constitution barred recovery of fees against the State. Finally, the court refused to entertain Lake View's waiver or estoppel arguments relating to sovereign immunity on the basis that the brief raising these points must be struck as untimely.

■ As previously indicated in this opinion, Lake View posits multiple bases for reversing the final order of the chancery court. We believe that two of those points have merit. We do not agree with Lake View, however, that the chancery court was required to sign the Agreed Order. Approval of the court is required for a class-action compromise. *See* Ark. R. Civ. P. 23(e). We do not view court approval as a rubber stamp but rather as action entailing discretion by the trial court. *Cf. Reynolds v. National Football League*, 584 F.2d 280 (8th Cir. 1978). There was no abuse of discretion by the trial court in connection with this point.

## II. Compliance Trial

Lake View contends that without a trial on the constitutionality of state initiatives since 1994, there is no basis for the chancery court's finding of mootness and failure to state a claim. We agree.

We begin with the observation that all parties and the chancery court apparently agree that the 1994 Order is still viable. No one contends that the 1994 Order has lapsed due to the failure to have a compliance trial after the first legislative acts were enacted in April 1995. Rather, the issue is whether the 1994 Order has any relevancy in light of the fact that the State's school funding formula has changed since 1994. The chancery court concluded that the mere fact of these legislative and constitutional changes rendered the 1994 findings obsolete.

■ We cannot subscribe to that conclusion. It would take an extraordinary leap of faith to assume that the mere passage of a new school funding formula resolves all issues relating to disparities in the school funding system set out in the 1994 Order. Surely, Amendment 74, which allows funding variances among school

districts due to local taxes, does not by itself resolve disparities in per pupil expenditures and opportunities under the State Constitution's equal protection clauses. Correcting such disparities lay at the heart of the 1994 Order. *See also DuPree v. Alma School Dist. No. 30, supra.*

Even assuming that Lake View has the burden of proving that the subsequent acts and Amendment 74 do not correct the disparities in treatment set out in the 1994 Order, it should be afforded an opportunity to make its case. As best we can determine, Lake View assiduously amended its pleadings after each set of legislative enactments and pushed for the matter to be scheduled for trial.

This brings us to the Agreed Order. There is no doubt that Lake View agreed to dismiss the case and forego future litigation if its attorneys' fees and costs were paid. But the chancery court refused to sign the order because it barred future contests on the unconstitutionality of the school funding system. The court also refused to approve attorneys' fees of $7 million, following Lake View's agreement that the case was moot. At that point, the agreement among the parties had fallen through, and the parties were back to square one on the compliance issue. Under these circumstances, Lake View was entitled to move on with its cause of action and press for a compliance trial.

There is another facet of the chancery court's decision that bears mention. Were this court to affirm that court's decision on grounds of mootness and failure to state a claim, our decision could be viewed as binding precedent on the issue of whether the 1995 and 1997 legislative acts and Amendment 74 corrected the disparities in pupil expenditures and pupil opportunities. Thus, any future contest to the constitutionality of the state funding system based on these changes would be barred. The State of Arkansas suggests that this might be an issue best left for another day. But this case cries for finality and resolution. We believe that a compliance trial and decision by the chancery court on whether the disparities in treatment noted in the 1994 order have been corrected so as to pass constitutional muster is the best way to achieve those goals. Without a compliance trial and the chancery court's analysis and decision, we are loathe to conclude that mere changes in the school funding system warrant a dismissal.

We reverse and remand for a trial to take place as soon as is practicable.

### III. Attorneys' Fees

██ We next agree with Lake View that the chancery court erred in denying attorneys' fees in this case. As a starting point, we conclude that the chancery court was correct that Arkansas follows the American Rule that attorneys' fees are not chargeable as costs in litigation unless permitted by statute. *See, e.g., Love v. Smackover Sch. Dist.*, 329 Ark. 4, 946 S.W.2d 676 (1997); *Millsap v. Lane*, 288 Ark. 439, 706 S.W.2d 378 (1986); *City of Hot Springs v. Creviston*, 288 Ark. 286, 705 S.W.2d 415 (1986).

This state, nevertheless, has recognized exceptions to that rule. One of those exceptions occurs when substantial benefits are afforded a business corporation, even when the benefit is not pecuniary and no fund has been created. *See Millsap v. Lane, supra.* In *Millsap*, the issue of the appropriate award of attorneys' fees centered on the economic benefit received by Millsap Processed Foods (MPF). At issue was the correct value of MPF land, building, and assets. This court decided that Millsap's derivative suit on behalf of MPF preserved a value of over $540,000 in corporate assets. We, therefore, increased the attorneys' fees based on the economic benefit to MPF resulting from counsels' efforts.

The concept employed in *Millsap* is analogous to what is at issue in the instant case. Here, there is no question but that a substantial economic benefit has accrued not only to the poorer school districts as a direct result of Lake View's efforts but to the state as a whole. With the gradual elimination of disparities in funding and opportunities for students and with the passage of Amendment 74, education in the State unquestionably has benefitted. The chancery court acknowledged that through Lake View's efforts, the State was getting a fair school funding formula. And Tim Humphries of the Attorney General's Office told the chancery court that the State of Arkansas stood by the language in the Agreed Order even after the court refused to sign it. Also, at the April 6, 1998 hearing, James M. Llewellyn, Jr., on behalf of the State advised the chancery court that "at least One Hundred Million and probably more" was created by the effects of Amendment 74 alone

and that "all of us still stand on the Agreed Order recitation that there was [a] One Hundred and Thirty Million Dollar fund created." Mr. Llewellyn further advised the chancery court that the court should reconsider the Agreed Order because "we all believe that you're the proper person to say what is a reasonable attorneys' fee." In addition to counsels' statements, there was testimony from state officials and a consulting economist at the May 22, 1998 hearing that revenues for the public school fund had increased dramatically since 1994, following the passage of the 1995 and 1997 legislative acts and Amendment 74. That the State derived a substantial benefit from the efforts of Lake View's counsel is beyond dispute.

The State of Arkansas now urges this court to conclude that regardless of that benefit and the representations by counsel for the State, the sovereign-immunity clause of the State Constitution (Article 5, § 20) bars any recovery for attorneys' fees. The State is correct that Article 5, § 20, provides that the State shall never be a defendant in any of her courts. Moreover, this court has said that tapping the State's treasury for payment of damages will render the State a defendant. *See, e.g., Newton v. Etoch*, 332 Ark. 325, 965 S.W.2d 96 (1998). Here, it is the State's treasury that would pay either on a pro rata basis from revenues allocated to those school districts that benefitted from the Lake View litigation or from the State coffers. Thus, the State's treasury would ultimately be liable for legal fees. We hold that the sovereign-immunity doctrine applies to this case.

We turn then to the question of waiver or consent. It is axiomatic that the State of Arkansas can voluntarily waive a sovereign-immunity defense. *See, e.g., Newton v. Etoch, supra; State of Arkansas Office of Child Support Enfcm't v. Mitchell*, 330 Ark. 338, 954 S.W.2d 907 (1997); *State v. Tedder*, 326 Ark. 495, 932 S.W.2d 755 (1996). In addition, the State can consent to being sued. *Ozark Unlimited Rehab. Coop., Inc. v. Daniels*, 333 Ark. 214, 969 S.W.2d 169 (1998). We conclude that when the State of Arkansas signed off in two published notices to the class members advocating that attorneys' fees be paid and continued to push for payment of attorneys' fees even after the chancery court refused to sign the Agreed Order, it waived its sovereign-immunity defense to payment of those fees. We do understand that the State was seeking resolution of this litigation by supporting payment of those fees, but we

are hard pressed to reconcile published notices to class members supporting fees and representations to the chancery court to the same effect with a later claim of immunity.

We recognize that the trial court refused to consider the waiver issue on grounds that it was raised too late by Lake View. Letter briefs had been submitted by Lake View on attorneys' fees, and the State of Arkansas then filed its brief in response. In its brief, the State argued the sovereign-immunity defense and prayed that no more briefs be filed. Lake View responded four days later and countered the sovereign-immunity defense. It is that reply brief that the chancery court refused to consider. We conclude that the chancery court erred in this regard. Lake View should have been allowed to counter the sovereign-immunity defense. To hold otherwise would allow the State to argue a defense and then effectively foreclose a response from the other side. Furthermore, based on the State's motion to strike, *both* the State's brief in response and Lake View's reply were untimely.

We emphasize that this is a unique case with a unique set of circumstances. By upholding an eventual award of attorneys' fees today, as we do, we are not sanctioning attorneys' fees in all public-interest litigation or endorsing a new exception to the American Rule. Nor are we advancing a particular method for paying those attorneys' fees, such as a contingent fee based on the economic benefit or the lodestar method. We further emphasize that we are wedded to no figure for attorneys' fees. All of that is for the chancery court to decide. We are simply holding that in this case, an economic benefit did accrue to the State of Arkansas due to Lake View's efforts and attorneys' fees should be awarded. Accordingly, we reverse the chancery court's decision denying attorneys' fees and remand for a determination of reasonable fees, after the compliance trial is completed. We leave it to the chancery court to determine what are reasonable fees, after taking into consideration all of the circumstances of this case. *See Chrisco v. Sun Indus., Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). Because the State has benefitted, we hold that the State should pay the fees awarded.

Reversed and remanded.

SPECIAL ASSOCIATE JUSTICE CAROL DALBY concurs.

SMITH, J., concurs in part; dissents in part.

GLAZE, J., dissents.

IMBER, J., not participating.

CAROL DALBY, Special Justice, concurring. I agree with the majority that the chancery court erred in failing to hold a compliance trial and in failing to award attorneys' fees. I concur because I believe additional clarification on the issue of attorneys' fees needs to be addressed.

Under the American Rule (which Arkansas follows) a litigating party, whether successful or not, must pay its own attorney's fee, unless a statute, contract, or judicial exceptions provide otherwise. Arkansas has recognized exceptions to this rule as noted in the majority opinion. Two of those exceptions under which an award of attorneys' fees in this case could be granted are the common-fund and the common-benefit exceptions. For the reasons set forth below, I believe the common-benefit exception should be applied to award attorneys' fees calculated by the lodestar method.

The common-fund exception permits the granting of attorneys' fees and other costs of litigation when a plaintiff is successful in creating, increasing, or preserving a fund which benefits an ascertainable class. The court, in exercising its equity jurisdiction may grant fees and costs by directing payment from the fund. *Newberg on Class Action*, Sec. 13.52 (3rd ed. 1992). In the case now before us, the evidence (despite the assertions of counsel in argument before the chancery court) is clear that the existing fund for school funding was increased, but no new fund was created nor preserved. It follows that any award of attorney's fees based on the common-fund exception should be based on the increase in that fund and should be taxed against those specific districts that received an increase in state funding. This, of course, would tax those who could least afford it (i.e. 'the poorer school districts'), which makes its application contrary to the purpose of the fee-shifting exception.

If, however, the chancery court does determine that an award of fees is warranted under the common-fund exception, I urge it to calculate the amount of fees based on the agreement made by the attorneys when they agreed to take the case. It appears that plaintiffs' attorneys were at one point satisfied to be paid a contingent of any settlement or judgment that Lake View received as per the employment contract entered into by the parties on September 3,

1998, some six years after the initial filing of this lawsuit. There certainly was nothing in the record to indicate a fee agreement prior to that time. Now, they are urging upon this Court, as they did in the chancery court, that they are entitled to a contingent fee from all monies now available to all school districts because of the legislative acts and Amendment 74. Their position is contrary to their own agreement. If they are to receive attorneys' fees at all under the common-fund exception, then they should be limited to that amount the Lake View School District recovered as per the fee agreement filed in the trial record at page 1239. Alternatively, I would urge the chancery court to apply the lodestar method to calculate attorneys' fees. This method would be particularly appropriate in this case since the first contingency-fee agreement was not entered into until September 3, 1998. How did plaintiffs' counsel expect to be paid during the first six years of litigation? It could not have been on a contingent basis since there was no writing stating such. *See* Model Rules of Professional Conduct, Rule 1.5.

The common-benefit exception is often used interchangeably with the common-fund exception, but there are subtle differences and it is those differences that determine who becomes responsible for payment of attorneys' fees. Under this exception the court is permitted to award attorney's fees from a defendant if the plaintiff's action results is a substantial benefit to the class but does not create a monetary fund from which fees might be awarded. *Newberg on Class Actions*, Sec. 13.52 (3rd ed. 1992). There is no doubt that the State of Arkansas has benefited and will continue to benefit by providing equality in education for all of its citizens and not just for those who reap the benefits of education by virtue of where they reside. The majority eludes to a "substantial economic benefit" accruing to the State as a whole. As noble as this statement is and in reality how true it may be, the record is devoid of any evidence as to the "substantial economic benefit" the State has received and no evidence has been offered upon which a percentage fee could be calculated. The only type of measurable economic benefit has inured to the poorer school districts, the effect of which is discussed above. I believe that the State has and will benefit as a result of plaintiffs' efforts by having better-educated citizens. It is under this exception I would grant attorneys' fees against the State. For the reasons set forth below, I am convinced that the proper calculation

of attorneys' fees under this exception and under the unique facts of this case should be by the lodestar method.

The lodestar method of fee calculation relies on the time and services that an attorney spends on a lawsuit, rather than the granting of a fee based on a percentage of the recovery. *Lindy Brothers Builders v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3rd Cir. 1973), *aff'd* in part and vacated, 540 F.2d 102 (3rd Cir. 1976). In *Lindy*, the court stated the purpose of a fee award in common-fund cases is "to compensate the attorney for the reasonable value of services benefiting the underrepresented claimant." 487 F.2nd at 167. The court must look to the hours reasonably expended multiplied by a reasonable hourly rate. *Id.* This Court recognizes that time spent on a case is "an important element to be considered in determining the reasonable value of an attorney's services." *Powell v. Henry*, 267 Ark. 484, 487, 592 S.W.2d 107 (1980); *Millsap v. Lane*, 288 Ark. 439, 443, 706 S.W.2d 378 (1986). This application is particularly appealing here since the attorneys cannot be paid a percentage of the true benefit to the citizens of this State — better education.

I am hard pressed to find any basis upon which the plaintiffs' attorneys should be compensated in the millions of dollars for their efforts. Plaintiffs' attorneys should be required to account to the chancery court and the citizens and taxpayers of this State (the class) as to what they expended in time and services in this lawsuit before the chancery court can determine a reasonable fee, as required by the Model Rules of Professional Conduct.

LAVENSKI R. SMITH, Justice, concurring in part; dissenting in part. I write separately to dissent in part and concur in part. I join the dissent as to the mootness of the instant appeal. I, too, find no authority in Arkansas law for a compliance trial. The statutory and constitutional scheme upon which the plaintiffs based their suit no longer exists. Plaintiffs may well have a valid complaint based upon the subsequently enacted laws but that should be a different case.

However, I join the majority and the concurrence on the issue of entitlement to attorneys' fees. As the prevailing party in an action that resulted in a substantial benefit to the class they represented, the

plaintiffs should be entitled to attorneys' fees. I join the concurrence in preferring the lodestar method for calculation of those fees.

TOM GLAZE, Justice, dissenting. This case has taken on a life of its own. It began in 1992, and with this court unnecessarily continuing further trial and review of the matter, it will predictably continue at least another two or more years.

In my opinion, the trial court should be affirmed for the reasons it found and others. The trial court recognized its predecessor court in 1994 entered orders holding the Arkansas school funding formula unconstitutional. However, since those orders, Amendment 74 to the Arkansas Constitution was adopted in 1996 and five legislative acts were passed in 1995 and 1997, which altered the school formula. In short, Arkansas's school funding system, as it exists today, is indisputably different from the one found unconstitutional in 1994. Amendment 74 and the acts passed in 1995 and 1997 are presumed constitutional and render this appeal moot.

The majority court seems to agree with Lake View School District that the district is entitled to a "compliance trial" — which apparently is for the purpose of determining the constitutionality of the laws enacted since 1994, and whether those acts have cured the unconstitutional disparities the chancellor found earlier. Neither the trial court, nor our court, has the authority or jurisdiction to hold "compliance trials." It is telling that the majority mentions no citation of authority that provides for such trials. In fact, our court defined its limited role in such matters in *Dupree v. Alma Sch. Dist. No. 30*, 279 Ark. 340, 651 S.W.2d 90 (1983). Similar to the case here, school districts brought suit in *Dupree*, charging that the state's financing system of its schools was unconstitutional because its financing of the state's educational needs was inadequate to rectify the inequalities based on widely varying local tax bases. The districts further contended that the state's system actually widened the gap between the property-poor and property-wealthy districts. The trial court agreed with the districts, found the system unconstitutional, and the *Dupree* court affirmed; but in doing so, our court delineated its limit of judicial interpretation when addressing such constitutional issues. The court stated as follows:

The dispositive answer is simply that *this court is not now engaged in — nor is it about to undertake — the "search for tax equity" which*

*defendants prefigure*. As defendants themselves recognize, *it is the Legislature which by virtue of institutional competency as well as constitutional function is assigned that difficult and perilous quest. Our task is much more narrowly defined: it is to determine whether the trial court committed prejudicial legal error in determining whether the state school financing system at issue before it was violative of our state constitutional provisions guaranteeing equal protection of the laws* insofar as it denies equal educational opportunity to the public school students of this state. *If we determine that no such error occurred, we must affirm the trial court's judgment, leaving the matter of achieving a constitutional system to the body equipped and designed to perform that function.* (Emphasis added.)

In the present case, the chancellor, by her November 9, 1994, order, performed her judicial duty by entering her 1994 orders, declaring the funding system violative of the Arkansas Constitution. She further correctly recognized that it was the duty of the General Assembly to provide for a system of free public schools, *and that the trial court should not dictate the elements of that system*. Our court has never sanctioned a procedure whereby a trial court, after ruling a statute unconstitutional, could retain jurisdiction of the case until the General Assembly enacts a new measure the trial court believes meets constitutional muster. Here, when the chancellor interpreted existing law and rendered an opinion that the school funding formula was unconstitutional, her duty ended. As for the changes made by the 1995 and 1997 laws, those laws will require new legal arguments and proof which may be tested in new and separate actions.[1]

In rendering her decision, the chancellor also denied Lake View School District the injunctive relief it requested, and instead stayed her decision for two years in order to give the General Assembly time to implement a funding system in conformity with her opinion. The chancellor exceeded her authority and jurisdiction with these directives. Certainly, the chancellor could issue a stay order while the case was pending on appeal, but that is all that Arkansas law allows. *See* Ark. R. Civ. P. 62(d) and Ark. R. App. P.—Civ. 8; *see also Ryder Truck Rental, Inc. v. Sutton*, 305 Ark. 374,

---

[1] Obviously districts or taxpayers may file suit later questioning the constitutionality of any or all of the General Assembly's enactments if they are satisfied those new acts fail to end the unconstitutional disparities in the state's school funding formula.

807 S.W.2d 909 (1991).[2]

Lake View School District's remedy was to cross appeal the chancellor's refusal to grant the district the injunctive relief it sought, so the district could enforce the orders it had obtained. Nor did Lake View question on cross appeal the chancellor's authority or jurisdiction to stay the 1994 orders entered in Lake View School District's favor. My alluding to this jurisdiction issue should be of no surprise to the litigants in this appeal, since this court in *Tucker v. Lake View Sch. Dist. No. 25*, 323 Ark. 693, 917 S.W.2d 530 (1996), pointed out that "the matter of jurisdiction may again arise if further proceedings before the trial court result in another appeal of this case."

In my opinion, this case ended when (1) the chancellor entered her opinions in 1994, (2) the Lake View School District failed to cross appeal, and (3) the direct appeal was dismissed. If Lake View School District had appealed the 1994 orders and pursued the injunctive relief to which it was likely entitled, the Lake View School's counsel then could have sought any attorneys' fees which they believed were due them.

As to the attorneys' fees issue, I am doubtful that counsel for Lake View School District are in a position to prove their entitlement at this stage of the litigation because they failed to establish the required class action or a common fund prior to the chancellor's decision in 1994. Again, if counsel had been unjustifiably denied such class action by the chancellor by her 1994 decision, that decision should have been challenged on cross appeal by the Lake View School district. Regardless, I respectfully, but strongly, disagree with the majority opinion wherein the court stretches the *Millsap* holding whereby this court allowed attorneys' fees to the plaintiffs in an action involving private shareholders and their busi-

---

[2] I note that the chancellor cited to a Montana case, *Helena Elementary Sch. Dist. 1 v. State*, 784 P.2d 412 (Mont. 1990) (supplementing and amending *Helena Elementary Sch. Dist. 1 v. State*, 769 P.2d 684 (Mont. 1989)), where that state's supreme court held it had equitable power to postpone the effect of its earlier opinion which held that state's funding of public schools unconstitutional. However, that court offered no actual authority to support the "equitable power" proposition. Even if the Montana decision had been based on a sound legal footing, the Montana court did not empower a trial court to withhold the effectiveness of its constitutional ruling. Clearly, if trial courts can be said to be empowered to postpone the effectiveness of their decisions, such authority could play havoc with appeals as has been the situation in this case.

ness corporation and the corporation received some economic benefit as a result of the litigation. *See Millsap v. Lane*, 288 Ark. 439, 706 S.W.2d 378 (1986). Even if the *Millsap* case involving private parties and a private entity should be extended to an action against governmental entities (an extension with which I disagree), the Lake View School District, to qualify under such a common-benefit theory, was required to show that a common fund or benefit was created for an identifiable class of beneficiaries. Here, the chancellor correctly held that there was no such pool of money; but even if there had been a pool, it was impossible to determine which of the class members benefitted and which did not. In short, Lake View School District made no attempt to delineate which school districts, taxpayers, and students benefitted, and which did not do so.

For the above reasons, I would affirm.