Cite as 2023 Ark. App. 179

# ARKANSAS COURT OF APPEALS
## DIVISIONS III & IV
### No. CV-20-322

| | |
|---|---|
| HOLLY WOOD, JOHN WOOD, AND TARA CAPITAL, LLC<br><br>APPELLANTS<br><br>V.<br><br>LADIMER ALKHASEH; GLORIA PETERSON, BENTON COUNTY COLLECTOR; TOMMY LAND, COMMISSIONER OF STATE LANDS; AND DAWN HILL TOWNHOUSE AND CONDOMINIUM PROPERTY OWNERS ASSOCIATION, INC.<br><br>APPELLEES | Opinion Delivered March 29, 2023<br><br>APPEAL FROM THE BENTON COUNTY CIRCUIT COURT<br>[NO. 04CV-16-77]<br><br>HONORABLE DOUG SCHRANTZ, JUDGE<br><br>AFFIRMED IN PART; DISMISSED IN PART |

**MIKE MURPHY, Judge**

This is a contract case in which the circuit court entered default judgments against the appellants, John Wood, Holly Wood (John's wife), and Tara Capital, LLC, on cross-claims filed by Luther Alkhaseh, appellee Ladimer Alkhaseh's father and predecessor in interest. After a hearing on damages, the circuit court awarded Ladimer a judgment in the amount of $747,424.35. The circuit court also awarded a judgment of foreclosure in favor of appellee Dawn Hill Townhouse and Condominium Property Owners Association, Inc.

("Dawn Hill POA"), which had intervened in the lawsuit to collect unpaid assessment fees from Tara Capital on a condominium unit that it acquired in the contract with Luther.

The appellants now appeal the orders striking the Woods' answer to Ladimer's cross-claims, the judgment awarding damages to Ladimer, and the judgment of foreclosure. They claim that the circuit court erred when it granted Luther's motion to substitute Ladimer as the plaintiff on the cross-complaint. Additionally, the Woods appear to assert that the default judgment against them should be set aside because the allegations in the cross-complaint do not support Ladimer's claims of breach of contract and fraud. The appellants also challenge the sufficiency of the evidence supporting the judgment awarding money damages to Ladimer—which they concede is not a final judgment—and Tara Capital urges reversal of the judgment of foreclosure in favor of Dawn Hill POA. We affirm in part and dismiss in part.

I. *Factual Background*

John and Holly (collectively "the Woods") became acquainted with Luther while they were neighbors in California. In January 2014, Luther asked the Woods to lend him $150,000 so that he could settle a tax lien on a property in Arizona. Because the Woods were unable to lend Luther the full amount that he requested, they introduced Luther to John's brother, David. According to John, the following transaction ensued:

> [Luther] drew up a promissory note for $180,000 [payable to David Wood]. The money was to be used—he was going to use that money, the $150,000 principal, to pay a . . . tax lien on property . . . that was going to sale in Arizona. Shortly [after the promissory note was drafted] my brother was not able to come up with the $150,000 principal. He notified me that he was not going to be able to . . . follow through . . . on [the] promissory note.

. . . .

So, I put [in] a cashier's check made out to Mr. Alkhaseh for $50,000, and . . . David . . . wrote . . . a cashier's check for $100,000.[1]

In addition to the promissory note, Luther executed a mortgage that pledged his property in Benton County, Arkansas—Dawn Hill Country Club—as collateral for the debt. As further incentive for the transaction, John and Holly executed a note promising to pay David the principal amount of $100,000. The balance of that note would be reduced by Luther's payments made on his note to David.

A few months later, on May 20, 2014, the Woods and Luther entered into another written agreement that was intended to help Luther settle unpaid property taxes on Dawn Hill Country Club in Benton County, Arkansas. Through their limited liability company, Tara Capital, the Woods agreed to pay the $180,000 debt that Luther owed to David. In exchange, Luther transferred his ownership interest in Dawn Hill Country Club and associated condominiums the Woods.[2] The Woods and Luther also agreed to share any profits earned by the country club, the condominium rentals, and any future sale of the property. Luther subsequently executed a quitclaim deed that transferred the property to Tara Capital.

On January 14, 2016, David filed a lawsuit against Luther and the Woods alleging that they had each defaulted on their respective promissory notes. On September 27, 2017,

---

[1]The additional $30,000 was interest charged on the loan.

[2]This mortgage was not filed of record in Benton County, Arkansas.

3

Luther followed with a cross-complaint against John and Holly (d/b/a Tara Capital) as well as a third-party complaint against Tara Capital, the Benton County collector, and the commissioner of state lands. The cross-complaint alleged that the appellants were liable for breach of contract and fraud as the result of their alleged failure to pay the debt, to pay the taxes on the property, and to fulfill their promise to share the profits. The complaint sought a constructive trust and an equitable accounting of the income and expenses of the country club, and it further claimed that the alleged fraud warranted piercing the corporate veil to disregard Tara Capital as a separate legal entity. The Benton County collector and commissioner of state lands were added as third-party defendants so that their respective interests in the unpaid taxes "may be properly reflected in [the] proceedings."

John and Holly filed a joint pro se answer denying the allegations in the cross-complaint on October 26, 2017. Through out-of-state counsel, Tara Capital filed an answer—also denying the facts alleged in the cross-complaint—on February 1, 2018.

On February 28, 2018, the circuit court entered an order striking Tara Capital's answer to the cross- and third-party complaints. The court found that Steven Rein, who appeared as counsel therein, was licensed out of state and had failed to take steps to be qualified to practice law in Arkansas. The circuit court also found Tara Capital "wholly in default" as a consequence of the stricken answer and, therefore, granted Luther's motion for a default judgment in the same order. Tara Capital did not file a notice of appeal from the court's February 28 order.

4

On November 16, 2018, Luther filed a motion in which he requested leave to substitute Ladimer as the cross-plaintiff and on the cross- and third-party complaints. The motion asserted that Luther had assigned his interest in the litigation to Ladimer in January 2018, and under Arkansas Rule of Civil Procedure 25(c), "the court may upon motion substitute a party upon a transfer of the original party's interest." The circuit court granted the motion in an order entered on December 13, 2018.

Shortly thereafter, on December 21, Ladimer moved for sanctions against the Woods and Tara Capital. He alleged that a severe sanction—in the form of striking the Woods' answer to the cross-complaint—was warranted because the Woods had failed to comply with a previous court order compelling discovery.

On January 25, 2019, John Wood filed a petition for Chapter 13 bankruptcy. The circuit court removed the case from the pending docket in an order entered on January 28. By order entered August 27, 2019, the bankruptcy court lifted the automatic stay "to allow the parties to resume the litigation pending before [the circuit court] for the purpose of obtaining a determination of the amount of debt that [John Wood] owes to Alkhaseh." In particular, the bankruptcy court determined that the Woods' objection to Ladimer's claim against the bankruptcy estate should be held in abeyance pending the circuit court's determination of the amount of the judgment that Ladimer was due in state court. Consequently, the circuit court entered an order reopening the case on August 27.

The circuit court held a hearing on Ladimer's motion for discovery sanctions on October 15, 2019. His attorney requested a default judgment against the Woods because a

5

default judgment had already been entered against Tara Capital. Ladimer's attorney also filed an affidavit setting forth the time spent on the motion for sanctions and sought an attorney's fee of $450. The circuit court's order granting the motion and awarding the requested fee was entered October 29.

On November 4, 2019, the court also entered an order granting Ladimer's motion for discovery sanctions. The court found that the Woods had failed to show that they were acting in good faith in defending against Ladimer's claims. The court further found that the Woods had more than ample time to comply with the order compelling discovery but had failed to do so. As a sanction, the court struck the Woods' answer and entered a default judgment against them, jointly and severally. The court also scheduled a hearing on damages to coincide with a damages hearing on the default judgment against Tara Capital. The appellants filed a notice of appeal from the October 29 and November 4 orders on November 20, 2019.

In the meantime, Dawn Hill POA joined the lawsuit by filing a complaint in intervention against Tara Capital, the Benton County collector, the commissioner of state lands, and David Wood on September 30, 2019. In its complaint, the POA alleged that it "is charged with the duty to fix, levy, collect, and enforce the payments of charges and assessments authorized to be collected for services provided within a certain real estate subdivision known as Dawn Hill Country Club Resort 'Cynthiana' Townhouses Phase II." The complaint also alleged that Lot 148 in the subdivision was subject to a recorded bill of assurances and protective covenants that provides for an assessment "to be collected and

6

creates a lien on [Lot 148] to enforce and secure payment of the assessments." In addition, the complaint claimed that Tara Capital, the recorded owner of the property, "ha[d] failed to pay assessments according to the terms of the Bill of Assurances and Protective Covenants," and as of September 1, 2019, Tara Capital owed $5,850. Consequently, Dawn Hill POA requested a judgment in rem "against the interest of all intervenor defendants" for the amount of the outstanding debt and applicable interest. Tara Capital filed an answer denying the material allegations in the POA's complaint in intervention on December 13, 2019.[3]

A bench trial was held on January 9, 2020, on the POA's complaint to foreclose its lien and to determine Ladimer Alkhaseh's damages resulting from the default judgments.[4] The court found that the POA had established that it had a lien in the amount of $6,050, the POA's lien was superior to David Wood's unrecorded mortgage, and it granted foreclosure on the unit. The judgment was in rem against the property. Also, the court awarded Ladimer a judgment against the Woods in the amount of $251,324.35. The court further awarded judgment to Ladimer in the amount of $496,000 for the Woods' failure to account for one-half the profits of the operation of Dawn Hill as well as attorney's fees. The

---

[3]The Woods joined Tara Capital's answer. The record does not reflect, however, that the POA amended its complaint to include them as intervenor defendants.

[4]David Wood did not present his case against appellants on the note they executed because he believed he was bound by the automatic stay issued in John Wood's bankruptcy case, which, again, was lifted for the purpose of determining the debt that John owed to Ladimer.

7

court indicated that the case was not concluded because there were to be further proceedings in bankruptcy.

A judgment memorializing the circuit court's ruling was entered on January 23, 2020. A judgment was entered on March 4, nunc pro tunc to January 23, to correct the rate of interest on the judgment. The appellants amended their notice of appeal to include the October 29 and November 4, 2019, orders awarding attorney's fees and striking their answer; the January 23, 2020, judgment; and the March 4, 2020, nunc pro tunc judgment.

The appellants now raise five issues on appeal. As we view their arguments, they assert that (1) the default judgment against the Woods and the judgment awarding damages to Ladimer should be reversed because Luther and Ladimer failed to comply with the notice requirements in Ark. R. Civ. P. 25(a) and (c) before the circuit court entered its order substituting Ladimer as a plaintiff on the cross-complaint and third-party complaint; (2) the circuit court erred by granting a default judgment against the Woods because the factual allegations in the complaint also did not support Ladimer's claims for breach of contract or fraud; (3) the judgment awarding damages and attorney's fees to Ladimer is not supported by sufficient evidence; (4) the circuit court erred by denying their motion for certification under Ark. R. Civ. P. 54(b); and (5) insufficient evidence supports the foreclosure decree in favor of the POA.[5]

---

[5]The appellants also assert that the circuit court "appropriately did not grant Ladimer a constructive trust over Dawn Hill, but if the court did, it clearly erred." Because we agree that the circuit court did not impose a constructive trust from which the appellants might take an appeal, we do not recognize it here as an assignment of error.

We affirm the default judgment because the Woods' challenges to the sufficiency of the allegations in the complaint are not preserved for our review. We also affirm the foreclosure decree because the circuit court did not clearly err when it determined that the POA was entitled to foreclose on its lien. We dismiss the appellants' remaining arguments, which challenge the order substituting Ladimer and the sufficiency of the evidence supporting damages and attorney's fees, for lack of jurisdiction.

II. *Discussion*

A. Default Judgment

The Woods first assert that the default judgment entered against them should be set aside because the allegations in the complaint were insufficient to establish their liability for breach of contract or fraud.[6] According to the Woods, the allegations in the cross-complaint failed to establish any breach of their promise to share the profits. They argue that their May 2014 agreement with Luther provided that they would share the profits "at a later time, not yet specified," and there was no factual allegation or evidence regarding any further agreement about the time or amount that they would pay a share of the profits to Luther. Because there was insufficient evidence of agreement on those terms, the Woods say, "there was insufficient evidence of breach."

---

[6]We do not view this argument as extending to Tara Capital, which did not file any notice of appeal from the circuit court's February 28, 2018, order striking its answer and granting a default judgment against it.

9

The Woods also suggest that the circuit court erroneously entered the default judgment because the factual allegations in the complaint failed to establish that they breached their promise to "take on the indebtedness and ownership of the [note with David]." They claim that David's lawsuit against them, in which he claims they defaulted on the $100,000 loan, is evidence that they fulfilled their promise to take on that debt.

Finally, the Woods argue that the circuit court erred to the extent it granted a default judgment on the basis of fraud. They say that the factual allegations in the cross-complaint fail to establish their alleged misrepresentation that they would "take on the indebtedness and ownership of the note with David" or, even so, that Luther or Ladimer justifiably relied on that statement. We have jurisdiction to hear these arguments under Ark. R. App. P.–Civ. 2(a)(4), which allows an appeal to be taken from "an order [that] strikes out an answer," and *Arnold & Arnold v. Williams*, 315 Ark. 632, 637, 870 S.W.2d 365, 367 (1994), in which the supreme court held that appellate jurisdiction under Rule 2(a)(4) extends to "all the issues dependent upon the stricken answer," including default judgments.

Having said that, we must decline to reach the merits of the Woods' challenges to the sufficiency of the allegations in the complaint for another reason: because they failed to raise them in a motion to set aside the default judgment under Arkansas Rule of Civil Procedure 55(c). While it is, indeed, erroneous to render a default judgment on a complaint that fails to state facts sufficient to state a cause of action, *see Nucor Corp. v. Kilman*, 358 Ark. 107, 127, 186 S.W.3d 720, 732 (2004), that argument, like other grounds to set aside a default judgment, must be raised below. *See Ark. Dep't of Hum. Servs. v. Egbosimba*, 2019 Ark. App.

608, at 1; *see also Rennels v. Four Seasons HVAC Distribs.*, 2011 Ark. App. 274, at 3 (refusing to consider arguments to set aside a default judgment that are raised for the first time on appeal). The Woods did not move to set aside the default judgment or challenge the sufficiency of the allegations in the complaint at the hearing on Ladimer's motion for discovery sanctions. Consequently, they are not preserved for our review.

Further, to the extent the Woods argue that Ladimer failed to introduce sufficient evidence to establish their liability for breach of contract or fraud, we do not view that argument as cognizable here. While the default judgment established their liability on those claims, *see Jean-Pierre v. Plantation Homes of Crittenden Cnty., Inc.*, 350 Ark. 569, 575, 89 S.W.3d 337, 340 (2002), there was no indication that the circuit court considered any evidence or made any factual findings that would transform the default judgment to one on the merits. *See Harold M. v. Clark*, 316 Ark. 439, 443–44, 872 S.W.2d 410, 414 (1994).[7] Therefore, for all of these reasons, we cannot agree that the circuit court erred when it entered the default judgment against the Woods.

B. The Judgment Awarding Damages and Attorney's Fees to Ladimer

The Woods and Tara Capital next argue that the circuit court did not have sufficient evidence to support the damages and attorneys' fees that it awarded. Regarding lost profits,

---

[7]Inasmuch as the Woods also claim that the circuit court should not have awarded damages because evidence supporting liability at the damages hearing was insufficient, we must dismiss that argument for the same reason that we dismiss their other arguments attacking the sufficiency of the evidence supporting damages: the judgment awarded to Ladimer is not a final judgment from which an appeal can be taken. *See infra*.

11

they contend that the evidence did not support the circuit court's finding that John earned a net income of $14,600 a month or the circuit court's alleged assumption that the Dawn Hill property was profitable when the appellants took it over. They also contend that the circuit court's calculation of damages was erroneous in other respects, including the circuit court's failure to consider factors reducing the rental income they earned from the condominiums as well as their expenses. Regarding the damages awarded on the Woods' breach of their agreement to pay David Wood's note, the Woods claim that the circuit court erred by relying on a calculation of outstanding principal and interest that was not supported by the evidence. Finally, the appellants argue that all of these errors, which they say demonstrate that Ladimer was not a prevailing party under Ark. Code Ann. § 16-22-308, led to an erroneous award of attorney's fees.

We must dismiss these claims because the judgment awarding damages to Ladimer is not a final order. The question of whether an order is final and appealable is jurisdictional, and this court is obligated to consider the issue on its own even if the parties do not raise it. *Price v. Carver*, 2017 Ark. App. 75, at 2, 513 S.W.3d 877, 879. The requirement that an order must be final and appealable is observed to avoid piecemeal litigation. *Id.* An order is final if it dismisses the parties, discharges them from the action, or concludes their rights to the subject matter in controversy. *Id.* at 3, 513 S.W.3d at 879. An order is *not* final, therefore, when it adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties. *Id.*

Entry of a final judgment on fewer than all claims is allowed, however, under the following circumstances:

(1) *Certification of Final Judgment.* When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination, supported by specific factual findings, that there is no just reason for delay and upon an express direction for the entry of judgment. . . .

(2) *Lack of Certification.* Absent the executed certificate required by paragraph (1) of this subdivision, any judgment, order, or other form of decision, however designated, which adjudicates fewer than all the claims or the rights shall not terminate the action as to any of the claims or parties, and the judgment, order, or other form of decision is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of the parties.

Ark. R. Civ. P. 54(b)(1) & (2) (2021). Here, there is no judgment adjudicating the claims that originated the lawsuit—David Wood's claims alleging default on the promissory note that the Woods executed. There is also no order dismissing the Benton County collector or the commissioner of state lands, who Ladimer also named as third-party defendants; and the record does not reflect that the circuit court has appointed a receiver or imposed a constructive trust, as Ladimer also requested in the cross- and third-party complaint. The circuit court did not certify a final judgment, moreover, under Rule 54(b). Accordingly, we do not have jurisdiction to review the appellants' arguments challenging the sufficiency of the evidence supporting the judgment awarding damages to Ladimer or, for that matter, the

13

associated award of attorney's fees.[8] *See Dodge v. Lee*, 350 Ark. 480, 486–87, 88 S.W.3d 843, 847 (2002) ("Without . . . a final order, no appeal may be entertained, even on a collateral issue such as attorney's fees.").

We are not persuaded by the appellants' argument that we have jurisdiction because their appeal from the order striking their answer is appealable under Ark. R. App. P.–Civ. (2)(a)(4), and the judgment awarding damages is dependent upon the stricken pleadings in the same manner as default judgments.[9] While our cases have held that an appeal from a stricken answer permits review of "all issues dependent on the stricken answer," *Arnold & Arnold*, 315 Ark. at 637–38, 807 S.W.2d at 367, the appellants do not cite—and we have not found—any case that permits any review beyond the default judgment that follows a stricken answer.

Rather, the supreme court has stated that "[a]s a general rule, an appeal from an interlocutory decision brings up for review only the decision from which the appeal was taken." *Villines v. Harris*, 340 Ark. 319, 323, 11 S.W.3d 516, 518–19 (2000). That means "the issues raised in the appeal must be reasonably related to the order appealed from," and

---

[8]We do not agree that this case warrants application of the exception that the supreme court recognized in *Omni Farms, Inc. v Arkansas Power & Light Co.*, 271 Ark. 61, 607 S.W.2d 363 (1980), as the appellants claim. The appellants' speculation that Ladimer "might try to execute on the judgment and force the sale of Dawn Hill, thus making impossible to place the [appellants] back to their former condition," falls short of the appellee's concession at oral argument in *Omni Farms* that the appellant could not be restored to its previous condition if the condemnation order there was not immediately appealable.

[9]This is especially so in the case of Tara Capital, which did not file any notice of appeal from the order striking its answer to the cross- and third-party complaint.

14

an interlocutory appeal "may not be used as a 'vehicle to bring up for review matters which are still pending before the trial court.'" *Id.* (quoting *Coleman's Serv. Ctr., Inc. v. S. Inns Mgmt., Inc.*, 44 Ark. App. 45, 49, 866 S.W.2d 427, 429 (1993)). A default judgment is unquestionably linked to an order striking an answer, and the default judgment, once granted, only establishes a defendant's liability. *See Jean-Pierre*, 350 Ark. at 575, 89 S.W.3d at 340. The judgment awarding damages to Ladimer, then, is beyond the scope of the interlocutory order that the appellants claim as a basis for this court's jurisdiction.

We also cannot agree with our dissenting colleagues' view that the bankruptcy court's order lifting the automatic stay in John Wood's Chapter 13 bankruptcy proceedings makes the judgment awarding damages final and appealable as it relates to him. While our supreme court has held that a bankruptcy court's order allowing the continuation of state court proceedings restores full jurisdiction to proceed to a final determination on appeal, *see Union Nat'l Bank of Ark. v. Nichols*, 305 Ark. 274, 277, 807 S.W.2d 36, 37–38 (1991), the court made it plain that it did so because the Arkansas Constitution provided for "a right to appeal from all *final* orders of the circuit court." *Id.* (citing Ark. Const. art. 7, § 1, *repealed by* Ark. Const. amend. 80, § 22(A) July 1, 2001) (emphasis added). As we conclude above, the judgment awarding damages to Ladimer is not final because claims and parties remain pending.

We are also influenced by our more recent decision in *Yarborough v. Powell*, 2015 Ark. App. 218, 459 S.W.3d 329, in which we dismissed an appeal on very similar facts. In *Yarborough*, appellant Terry Yarborough had been appointed as one of the trustees of his late

15

mother's trust. His sister, appellee Jane Powell, sued Yarborough for an accounting of the trust's assets, distributions, and expenses. Powell also filed amended complaints that additionally sought an order setting aside Yarborough's release of a mortgage that secured a loan he received from the family business (a cosmetology school); an accounting of the family business; Yarborough's removal as an officer; the appointment of a receiver; and damages. The circuit court entered a judgment for Powell, but only on her claims concerning the cosmetology school. The court also reserved consideration of Powell's request for attorney's fees and costs for a later date.

Yarborough requested a new trial. He filed for bankruptcy before the circuit court could hear the motion, but the bankruptcy court partially lifted the automatic stay that accompanied the filing of his petition to allow the circuit court to consider (1) Powell's entitlement to attorney's fees and costs; and (2) Yarborough's request to set aside the judgment. The circuit court ultimately denied Yarborough's motion to set aside as well as several other postjudgment motions that he later filed. The circuit court also denied Powell's request for attorney's fees. Yarborough appealed the orders denying his postjudgment motions, and Powell cross-appealed the circuit court's rulings.

We dismissed both the appeal and the cross-appeal for lack of a final order because the record did not reflect that Powell's claims involving her mother's trust, which originated the lawsuit, had been adjudicated. *Id.* at 4–5, 459 S.W.3d at 331–32. There was also no indication that an accounting of the family business or a settling of the family business by a receiver had taken place as the circuit court ordered. *Id.* at 4, 459 S.W.3d at 332. In

16

dismissing the appeal, we noted that Yarborough's bankruptcy "[did] not affect the lack of finality" because "a bankruptcy filing does not completely divest the circuit court of jurisdiction over all matters in a lawsuit." *Id*. Rather, "it simply suspends the court's jurisdiction, subject to that jurisdiction being restored." *Id*. Accordingly, "while various claims in [the] lawsuit were stayed by the bankruptcy court at the time the orders on appeal were entered, those claims remained pending, and the circuit court could have reacquired the ability to rule on them at any time." *Id*. We believe our decision in *Yarborough* controls here, and we therefore dismiss the appellant's challenges to the sufficiency of the evidence supporting the damages the circuit court awarded to Ladimer as well as the award of attorney's fees.

### C. Rule 54(b) Certification

The appellants next argue that the circuit court erred by denying their motion to certify the judgment awarding damages to Ladimer under Rule 54(b). They allege that there was no just reason for delaying their appeal of the judgment; and considering the interest that will accrue until the entire case is resolved, any further delay would cause undue hardship to them. The appellants further contend that the circuit court's failure to certify the judgment also contravenes the rule's intent to prevent piecemeal appeals. We do not agree.

We have already observed that the "denial of certification [under Rule 54(b)] is not within itself appealable[.]" *Cureton v. Stout*, 2020 Ark. App. 414, at 5 n..6, 609 S.W.3d 435,

17

438 n.6. Accordingly, we decline to review the circuit court's denial of a Rule 54(b) certificate.

## D. Substitution of Parties

Appellants additionally argue that the circuit court erred when it granted Luther's motion to substitute Ladimer as the cross- and third-party plaintiff in the case. In particular, they say that Rule 25(c) and Rule 25(a) of the Arkansas Rules of Civil Procedure required Luther to serve them with notice that he had assigned his interest in the litigation to Ladimer in the same manner that a "statement of the fact of death" is served when a party dies. Luther did not do so within ninety days of making the assignment, and according to the appellants, this failure deprived the circuit court of jurisdiction to grant the substitution. They further argue that the jurisdictional nature of the issue enables this court to consider it on appeal despite their failure to lodge an objection below. Unfortunately, we must also dismiss this argument for lack of jurisdiction because the appellants failed to include the substitution order in their notice of appeal.

A notice of appeal must designate the judgment or order appealed from, *see* Ark. R. App. P.–Civ. (3)(e) (2022), and orders not mentioned in a notice of appeal are not properly before the appellate court. *E.g.*, *Daniel v. State*, 64 Ark. App. 98, 100, 983 S.W.2d 146, 147 (1998). In the instant case, the appellants' fourth amended notice of appeal declares that they appeal "the orders entered on October 29, 2019 (awarding attorney's fees); November 4, 2019 (striking John and Holly's answer and granting a default judgment); January 23, 2020 (awarding foreclosure to the POA and damages to Ladimer); March 4, 2020 (the *nunc pro*

*tunc* judgment); and April 8, 2020 (denying certification under Rule 54(b)). The notice does not include the December 13, 2018 order substituting Ladimer as the plaintiff on the cross and third-party complaint.

Moreover, while we recognize that Ark. R. App. P.–Civ. 2(b) provides that "[a]n appeal from any final order also brings up for review any intermediate order involving the merits and necessarily affects the judgment," we cannot view the substitution order as an intermediate order that is automatically brought up for our review. An order striking an answer is not a final judgment that would trigger application of Rule 2(b), *see Allen v. Greenland*, 347 Ark. 465, 467, 65 S.W.3d 424, 426 (2002), and for reasons that we have already explained, *supra*, the judgment awarding damages to Ladimer also does not constitute a final order. Accordingly, we cannot reach the merits of the appellants' challenge to the circuit court's order substituting Ladimer as the plaintiff on the cross- and third-party complaint.

E. Sufficiency of the Evidence Supporting the Foreclosure Decree

Finally, Tara Capital argues that the judgment in favor of the POA is not supported by sufficient evidence that it was obligated to pay the assessments. As we say above, Tara Capital asserts that the evidence introduced at the hearing established that it owned only a condominium "lot" and not condominium "unit" that was subject to the fee assessment. We affirm.[10]

---

[10]We note that we have jurisdiction of the appeal from the foreclosure decree despite the lack of a Rule 54(b) certificate. The decree was placed into execution with the

19

In civil bench trials, the standard of review on appeal is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *Friday v. Friday*, 2019 Ark. App. 129, at 3–4, 572 S.W.3d 884, 886. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court, on the entire evidence, is left with a firm conviction that a mistake has been made. *Id.* at 4, 572 S.W.3d at 886. Facts in dispute and the determinations of credibility, however, are solely within the province of the fact-finder. *Id.*

There was no dispute at the hearing that a bill of assurances allowed the POA to charge reasonable maintenance fees, and that covenant (as well as others) ran with the land. Particularly, the POA offered proof establishing that the POA agreed to a bill of assurances that applied to "Dawn Hill Country Club Resort 'Cynthiana' Townhouses Phase II." The pertinent paragraph in the Bill of Assurances provided that

> [t]he Dawn Hill Townhouse and Condominium Property Association, Incorporated,
> Board of Directors shall have the right and ability to charge reasonable maintenance
> fees to be assessed against each unit on a monthly basis. Said maintenance fee shall
> be used for trash services, septic system maintenance, lawn care, outdoor lighting of
> common areas, and for other expenses as determined by the exclusive decision of the

appointment of a commissioner and an order to sell the property, and in a line of cases including *Alberty v. Wideman*, 312 Ark. 434, 850 S.W.2d 314 (1993); *Scherz v. Mundaca Investment Corp.*, 318 Ark. 595, 886 S.W.2d 631 (1994); and *Wantanabe v. Webb*, 320 Ark. 375, 896 S.W.2d 597 (1995), the supreme court has held that an executed foreclosure decree is appealable without a certification under Rule 54(b). *See Alberty*, 312 Ark. at 437, 850 S.W.2d at 316 ("Where there is such an order, a certification under Rule 54(b) is not necessary."). Moreover, while we are aware that the supreme court subsequently dismissed an appeal from a foreclosure decree in *Grand Valley Ridge, LLC v. Metropolitan National Bank*, 2010 Ark. 402, at 3–4, we view that case as distinguishable because there is no indication that the decree in that case had been executed or any discussion of *Alberty*, *Scherz*, or *Wantanabe*, in which the existence of an executed decree was of paramount importance.

> Dawn Hill Townhouse and Condominium Property Owners Association, Incorporated, Board of Directors. Any past due or unpaid maintenance fees shall be a lien against the unit owned by the person or entity whose fees are delinquent and shall be enforceable by foreclosure of said lien.

Johnathan Barnett, the president of the POA, also testified that the association provides all of the services set forth in the bill of assurances. The covenants further provide that they

> shall run with the land and shall be binding on all parties and all persons claiming under them for a period of 20 years from the date of these covenants are recorded unless changed or amended by a majority of the unit owners, after which time said covenants shall be automatically extended for successive periods of five years unless an instrument signed by a majority of then owners of the lots has been recorded agreeing to change the covenants in whole or in part.

In addition, Mr. Barnett testified that the legal description of the property subject to the bill of assurances matched the legal description of the property in the recorded plat of the Cynthiana Subdivision Townhouses Phase II. The POA also offered a quitclaim deed demonstrating that Tara Capital was the current owner of "Lot 148 of Cynthiana Townhouses Subdivision Phase 2."

Nevertheless, as stated above, Tara Capital asserts that the proof at the hearing was insufficient to establish that it was obligated to pay the maintenance fees charged to each unit owner, as provided in the bill of assurances. There was no evidence, it says, that "a unit was on Lot 148."

We disagree. In the following colloquy, John Wood testified, in pertinent part, that a townhouse was on Lot 148:

Q.    Can you tell me a little bit about that lot so the court can be familiar?

> A. It's — as described in the legal description—*it's a townhouse* that's in Cynthiana Phase II or whatever.

(Emphasis added.) Black's Law Dictionary, moreover, defines a townhouse as "a dwelling *unit* having usually two or three stories and often connected to a similar structure by a common wall and (particularly in a planned-unit development) sharing and owning in common the surrounding grounds. *Townhouse*, *Black's Law Dictionary* (9th ed. 2009) (emphasis added). With John Wood's testimony in mind as well as other evidence demonstrating that the development was for condominium townhouses, we cannot say that the circuit court's judgment of foreclosure was clearly against the preponderance of the evidence. We therefore affirm the judgment of foreclosure.

## IV. *Conclusion*

We decline to reach the Woods' challenges to the default judgment entered against them because those issues are not preserved for appellate review. The judgment awarding damages to Ladimer is not a final and appealable order; therefore, we dismiss the appellants' arguments challenging the sufficiency of the evidence supporting that judgment as well as the associated award of attorney's fees. We also hold that the appellants' failure to include the order substituting Ladimer in their notice of appeal deprives us of jurisdiction to reach that issue. Finally, we hold that sufficient evidence supports the decree of foreclosure in favor of the POA.

Affirmed in part; dismissed in part.

KLAPPENBACH, GRUBER, and WOOD, JJ., agree.

22

BARRETT and HIXSON, JJ., dissent.

**STEPHANIE POTTER BARRETT, Judge, dissenting**. The majority dismissed appellant John Wood's challenges to the sufficiency of the evidence supporting the damages awarded against him to appellee Ladimer Alkhaseh on the basis of its conclusion that the judgment awarding these damages was not a final order. Because I believe the trial court's award of damages to Alkhaseh was a final order from which John Wood may appeal, I respectfully dissent.

There are multiple parties to this litigation with complaints, cross-claims, counterclaims and third-party claims. On January 25, 2019, appellant John Wood filed for Chapter 13 bankruptcy protection, and on the same day, the bankruptcy court entered an automatic stay of "*certain collection and other actions against the debtor and the debtor's property*." (Emphasis added.) The case at bar is clearly a collection action against John Wood and John Wood's property and was, therefore, subject to the stay.[1] Accordingly, three days later, on January 28, 2019, the circuit court entered an order removing the case from the pending docket and ordered that "*this matter is closed until the bankruptcy matter of [John Wood] is resolved and a Motion to Reopen is filed by any party*." (Emphasis added.)

---

[1] It should be noted, as addressed more fully below, that the judgment in favor of Alkhaseh in the amount of $747,424.35 is against John Wood and Holly Wood, jointly and severally. Hence, the judgment against Holly Wood is a "*certain collection and other action[ ] against [John Wood] and [John Wood's] property*." (Emphasis added.) Further, any judgment against Tara Capital, LLC, is similarly a collection action against John Wood and his property because Tara Capital, LLC, is not a duly authorized limited liability company, and any liability of Tara Capital, LLC, will encumber any assets of John Wood.

23

John Wood's petition for bankruptcy proceeded through the bankruptcy court, and the bankruptcy judge was faced with the responsibility of creating and enforcing a Chapter 13 repayment plan. Two of John's largest liabilities were the contingent unliquidated claims set forth in the present circuit court litigation. The first unliquidated claim was John's potential liability on David Wood's complaint alleging that John had breached a $150,000 promissory note. The second unliquidated claim was John's potential liability on Alkhaseh's cross-claim based on John's alleged nonpayment on the promissory note and the allegation that John had breached a transfer agreement regarding the transfer of the ownership of Dawn Hill Country Club in exchange for certain promises. This amount of the potential liability on this cross-claim was so unascertainable and undefinable that Alkhaseh simply prayed for a judgment "in excess of federal court jurisdiction." To fashion the repayment plan, it was imperative that these two claims were liquidated to a sum certain for use in fashioning the Chapter 13 repayment plan.

In order to do so, the bankruptcy court maintained jurisdiction over David's promissory-note complaint, but it transferred Alkhaseh's claims against John to circuit court for disposition through a partial lift of the automatic stay it had imposed on the circuit court litigation. To that end, on August 27, 2019, the United States Bankruptcy Court lifted the automatic stay in the Chapter 13 bankruptcy filed by John by consent of John and Alkhaseh "to allow the parties to resume the litigation pending before the Honorable Doug Schrantz in the Circuit Court of Benton County, Arkansas *for the purpose of obtaining a determination of the amount of the debt that the debtor owes Alkhaseh*." (Emphasis added.)

24

Due to the fact that "*certain collection and other actions against the debtor and the debtor's property*" were stayed and due to the restrictive language of the bankruptcy order lifting the stay, I believe that the jurisdiction of the circuit court was conclusively and categorically limited to the issue of determining the amount of debt that John owes to Alkhaseh and that John remained protected from any other action by the circuit court to assess damages by other claimants by virtue of the stay under the bankruptcy proceeding. (Emphasis added.) The whole idea behind a bankruptcy stay is to maintain the status quo of the debtor vis-à-vis creditors during bankruptcy so as to prohibit various creditors from racing to the courthouse and obtaining judgments––and therefore, judgment liens—to the detriment of other similarly positioned creditors. I find that all orders of the circuit court herein that are not specifically related to the debt that John owes to Alkhaseh are void[2] because they emanate from claims independent of the limited jurisdiction granted by the bankruptcy court, and I further find that the order of damages against John in favor of Alkhaseh is final for the purposes of appeal and should be reviewed by this court.

The majority opinion answers several ancillary questions arising from the bankruptcy estate except the one question specifically authorized by the bankruptcy court: "What is the amount of the debt that John Wood owes Alkhaseh." To that narrow essential question,

_____

[2]In light of the limited jurisdiction that the circuit court was granted to determine the amount of damages John owed Alkhaseh, all other orders, including the judgment of foreclosure entered in favor of Dawn Hill, are void for lack of subject-matter jurisdiction because the subject-matter jurisdiction was suspended by the filing of the Chapter 13 bankruptcy. *See Jones v. Nat'l Bank of Com. of El Dorado*, 207 Ark. 613, 182 S.W.2d 377 (1944).

the majority failed to answer, depriving the bankruptcy court of the one decision it needed and for which it asked.

In fairness to the majority, we acknowledge that there *may* be additional litigation in the future in circuit court. The bankruptcy court stayed the prosecution of David's complaint for breach of the $150,000 promissory note and did not lift that cause of action from the stay. The bankruptcy court may subsequently entertain that complaint, it may lift the stay in the future and transfer it to circuit court, or it may release it from the bankruptcy estate altogether. However, none of those options are of any consequence to the limited question asked of our court: What is the amount of debt that John owes Alkhaseh? I believe the circuit court's award of damages against John to Alkhaseh is final for three reasons. First, because the order concludes the parties' rights to the subject matter in controversy; second, because the order of judgment that arises from an order striking an answer is immediately appealable under Arkansas Rule of Appellate Procedure–Civil 2(a)(4); and third, because if the order is not immediately appealable, it will divest a substantial right in a way as to put it beyond the power of the court to place the party in the party's former condition.

In order for a judgment to be final, it must dismiss the parties from court, discharge them from action, or conclude their rights to subject matter in controversy. *Taylor v. Taylor*, 26 Ark. App. 31, 759 S.W.2d 222 (1988). To be final and appealable, an order must not only decide the rights of parties but also put court's directive into execution, ending the litigation *or a separable part of it*. *Tucker v. Lake View Sch. Dist. No. 25 of Phillips Cnty.*, 323 Ark. 693, 917 S.W.2d 530 (1996); *Ark. Dep't Hum. Servs. v. Farris*, 309 Ark. 575, 832 S.W.2d

26

482 (1992); *Foreman v. Ark. Dep't of Hum. Servs.*, 78 Ark. App. 48, 82 S.W.3d 176 (2002); *Lee v. Konkel-Swaim*, 73 Ark. App. 429, 43 S.W.3d 767 (2001); *Capitol Life & Accident Ins. Co. v. Phelps*, 72 Ark. App. 464, 37 S.W.3d 692 (2001).

Alkhaseh's judgment against John on appeal herein is a final and appealable order because the rights of the parties (John vis-à-vis Alkhaseh) have been decided, and the court's directive has been put into execution by its determination presented to the bankruptcy court, ending a separable part of this litigation. The bankruptcy court will take the damages award that has not been reviewed and that clearly lacks support by the preponderance of the evidence and prepare and enforce a repayment schedule under the Chapter 13 bankruptcy plan that will be completed and implemented long before the state court concludes the litigation. After appellate review of this final damages order, we would surely find that there was insufficient evidence to support the damages awarded to Alkhaseh. The circuit court even stated as it recited its findings that the only information that it had was from an unreliable source: "Yet it is the only information that we have here related to what should have been a complete set of books regarding the income and expenses of a business operation. Totally absent. And it – it pains me to have to rely on the unreliable, if you will, but that's all I have. . . ." So, we are sending a judgment back to the bankruptcy court for it to develop a repayment plan that is likely, if not probably, in error.

Furthermore, an order striking an answer, as in the case presented, is immediately appealable under Arkansas Rule of Appellate Procedure–Civil 2(a)(4). An order is also immediately appealable if it would divest a substantial right in a way as to put it beyond the

27

power of the court to place the party in the party's former condition. *See Smith v. Flash TV Sales & Serv., Inc.*, 17 Ark. App. 185, 706 S.W.2d 184 (1986). Not allowing Wood to appeal the damages awarded against him will forever bar his ability to do so after the bankruptcy court resumes its proceedings wherein Alkhaseh is asserting a claim for the debt that the state trial court has now determined.

At the point that this court finally reviews the judgment of damages and finds them unsupported by a preponderance of the evidence, the court could reverse and remand the damages award; but should the bankruptcy have concluded or should the repayment schedule have progressed significantly, John will be divested of his rights, and no court will be able to place him in his former condition. Therefore, under *Smith, supra*, the award of damages is final and should be reviewed by this court. The bankruptcy court asked the state court to give it a sum certain to use in the Chapter 13 bankruptcy proceeding, and the defendant in that action has the right to have that sum—now determined by the circuit court—reviewed by an appellate court. To do otherwise is a grave injustice to the parties.

Furthermore, the bankruptcy court, in the August 27, 2019 order lifting the stay for a limited purpose, stated, "This Court shall hold the debtor's objection to Claim 4 in abeyance until the state court has made such a determination." When is this judgment for damages against John reviewable if not now? The majority relies on *Yarborough v. Powell*, 2015 Ark. App. 218, 459 S.W.3d 329, claiming the case has similar facts. However, the majority's conclusion fails to consider the distinct difference between a Chapter 7 bankruptcy in *Yarborough* that was filed after a sum-certain judgment was obtained against

28

the debtor staying the proceedings and preventing the collection of the judgment; and the Chapter 13 bankruptcy that was filed before judgment in the instant case and the stay lifted by the bankruptcy court for the sole purpose of ascertaining a judgment amount. The difference is that the debtor in <u>Yarborough</u> is protected by the stay, and once the bankruptcy is concluded, the debtor may be returned to the same position he was in before. In this case, the debtor is not protected from the collection of the error-prone judgment when the bankruptcy resumes and cannot be returned to the same position he was in before because a repayment plan will have commenced.

Furthermore, *Yarborough* relies on cases such as *Bank of the Ozarks v. Cossey*, 2014 Ark. App. 581, 446 S.W.3d 214 (*Cossey I*), in which the court of appeals dismissed the case for lack of a final order and was overturned on review by the Arkansas Supreme Court. In *Cossey I*, a claim was filed alleging certain deficiencies by a trustee and requesting an accounting. The circuit court entered an order that declared the bank to be trustee of the Hamilton Living Trust and ordered the Bank to provide an accounting. Before the accounting was performed, the case was appealed. The Arkansas Court of Appeals held that the order was not final and appealable because there was more activity anticipated below in the form of an accounting and dismissed the appeal. *See Cossey I*, 2014 Ark. App. 581, 446 S.W.3d 214. The appellant filed a petition for review with the supreme court, arguing, inter alia, that the order was final and appealable. The supreme court agreed and issued *In re Hamilton Living Trust*, 2015 Ark. 367, 471 S.W.3d 203, which vacated and set aside the court

of appeals opinion in *Cossey I*. The supreme court affirmed the circuit court's order after determining that the order was final and held:

> The circuit court's order was appealable as a final judgment or decree. *See* Ark. R. App. P.–Civ. 2(a)(1) (2014). For a judgment to be final, it must dismiss the parties from the court, discharge them from the action, or conclude their rights to the subject matter in controversy; thus, the order must put the trial court's directive into execution, ending the litigation, or a separable branch of it. *Smith v. Smith*, 337 Ark. 583, 990 S.W.2d 550 (1999). Such is the case here. A single petitioner (Cossey) brought a single claim (accounting) against a single respondent (the Bank). After a hearing, the circuit court granted the petition and ordered the Bank to perform an accounting. Thus, the parties were dismissed from the court, the action was discharged, and the rights to the subject matter were concluded.

*Id.* at 3 n.1, 471 S.W.3d at 206 n.1.

That is the very instance that we have in this case before us involving John Wood and Ladimer Alkhaseh and the subject matter of damages. The majority is making the same mistake in this case as it did in *Cossey I* by claiming that the judgment is not a final, appealable order.

I would be remiss if I did not point out one additional problem. There is a judgment jointly and severally against John Wood and Holly Wood for $750,000. If John's stay does not extend to his co-debtor, Holly, then property co-owned by Holly and John is subject to execution. An execution against Holly will diminish John's bankruptcy estate. This is exactly the scenario that a stay was designed to protect. Now, we have creditors (Alkhaseh and Dawn Hill Townhouse and Condominium POA) that have climbed over other creditors and enhanced their creditor status to the detriment of other creditors. This is why a stay can be extended against a co-debtor in certain circumstances.

30

*Analogy to Federal Court/State Court Question*

The purpose behind the bankruptcy court's lifting of the stay to determine the amount of the debt that John owes Alkhaseh is obviously to allow the circuit court to litigate and liquidate Alkhaseh's cross-claim to a sum certain so that the bankruptcy court can justifiably rely on that amount in fashioning John's Chapter 13 repayment plan. That begs the question of why, or how, can the bankruptcy court rely on that sum certain in fashioning the repayment plan, if that sum certain is still subject to subsequent appellate review? The answer, obviously, is that it cannot rely on that amount with any reasonable certainty. The bankruptcy court requires a *definitive answer*. And the *definitive answer* can be supplied to the bankruptcy court only after appellate review. By way of analogy, this is not unlike the scenario where in federal court litigation, a federal district court–pursuant to Arkansas Supreme Court Rule 6-8–asks the Arkansas Supreme Court to accept jurisdiction and answer a state question posed therein. The federal court requires a definitive answer, not an intermediate answer. The federal court does not ask a circuit court for an answer and does not even ask the court of appeals for an answer to the question. Why? Because decisions of the circuit court and even the court of appeals can be reviewed and overturned by the supreme court and further delay the federal litigation. The federal court requires a *definitive answer*, and the definitive answer can only come from the Arkansas Supreme Court. This requirement of a definitive answer from the supreme court was discussed in the following excerpt:

Section (a) of Arkansas Supreme Court Rule 6-8 permits only the Arkansas Supreme Court to receive and respond to certified questions. The Arkansas General Assembly's rejection of an alternative rule, which would have allowed the Arkansas Court of Appeals to respond to certified questions as well, sheds light on the reason why Section (a) may have been so structured. In 1966, the American Law Institute suggested this same limitation of allowing questions to be certified only to a state's highest court, a limitation that the UCQLA Commissioners later accepted. According to one commentator, the reason for this decision was the thought by the UCQLA Commissioners that delay "would be increased by certification to an intermediate state court whose decisions would always be subject to appeal and reversal." *Therefore, certification to the Arkansas Court of Appeals would defeat major purposes of the certification process of obtaining a final, definitive answer on Arkansas state law and saving federal courts and litigants time and money.* By adopting the more limited approach, and thereby avoiding the risks of appeal and reversal, the Arkansas General Assembly helped to ensure that the certification process in Arkansas would achieve these goals.

Coby W. Logan, *Certifying Questions to the Arkansas Supreme Court: A Practical Means for Federal Courts in Clarifying Arkansas State Law*, 30 U. Ark. Little Rock L. Rev. 85, 89 (2007) (footnotes omitted) (emphasis added).

The analogy here is that just like a federal district court requires a definitive answer to the state question to proceed in the federal litigation, the federal bankruptcy court similarly requires a definitive answer to the question of how much debt the debtor, John Wood, owes Alkhaseh before it can proceed and fashion a Chapter 13 repayment plan. Without a definitive answer, and especially with an intermediate answer that is rife with potential error, the bankruptcy cannot proceed with any expectation of accuracy or reliability. If the bankruptcy court fashions a Chapter 13 repayment plan based on indefinite and inaccurate information from the circuit court, the plan is doomed to subsequently fail. For hypothetical purposes, assume the bankruptcy court utilizes the $747,424.35 judgment

against John Wood in fashioning its repayment plan, and further assume that the circuit court was 100 percent in error and the judgment against John Wood should be $0. How can the federal bankruptcy court's repayment plan possibly be correct when the circuit court has erroneously entered a $747,424.35 liability in John Wood's bankruptcy estate? That judgment must be reviewed by this court, and we must provide the bankruptcy court with a definitive answer to the only question referred to us: How much debt does John Wood owe Alkhaseh?

<em>... or a Separable Part of it.</em>

It is elementary that in order for judgment to be final, it must dismiss parties from court, discharge them from action, or conclude their rights to subject matter in controversy. *Taylor v. Taylor*, 26 Ark. App. 31, 759 S.W.2d 222 (1988). To be final and appealable, an order must not only decide the rights of the parties, but also put the court's directive into execution, *ending the litigation or a separable part of it.* *Tucker*, 323 Ark. 693, 917 S.W.2d 530; *Farris*, 309 Ark. 575, 832 S.W.2d 482; *Foreman*, 78 Ark. App. 48, 82 S.W.3d 176; *Lee*, 73 Ark. App. 429, 43 S.W.3d 767; *Phelps*, 72 Ark. App. 464, 37 S.W.3d 692.

The standard—to be final and appealable, an order must not only decide the rights of parties, but also put court's directive into execution, *ending the litigation or a separable part of it*—has been quoted more than one hundred times in Arkansas appellate jurisprudence since apparently first used in 1978 in *Festingor v. Kantor*, 264 Ark. 275, 571 S.W.2d 82 (1978). While we are familiar with the premise that the order must decide the rights of the parties, the remainder of the standard,—but also put the court's directive into execution, *ending the*

33

*litigation or a separable part of it*—is not as familiar.  In fact, the final phrase ". . . or a separable part of it" has not received any judicial interpretation.  But it has been quoted with approval more than one hundred times, so it must mean something.  By using ordinary definitions, "or a separable part of it" must mean what it says.  In some circumstances where part of the litigation can be "separated," then that separated part may be deemed final and appealable. That is exactly what we have here.

When the bankruptcy court entered its stay and the circuit court ordered "this matter is closed," all proceedings in circuit court lurched to a stop. The circuit court, perhaps, could have entered a less expansive order, but it ordered "this matter is closed."  What was closed?

- David Wood's complaint against John Wood and Holly Wood on the promissory note

- Alkhaseh's cross-claim for nonpayment on the promissory note and breach of the transfer agreement against John Wood and Holly Wood

- Alkhaseh's third-party complaint against Tara Capital, LLC

- Alkhaseh's third-party complaint against the Benton County collector

- Alkhaseh's third-party complaint against commissioner of state lands

- Dawn Hill POA's complaint in intervention

When John Wood filed his petition for bankruptcy, an automatic stay was entered. The purpose of the automatic stay is to maintain the status quo of the debtor's estate vis-à-vis various creditors and to prevent a race to the courthouse where one creditor could favorably position itself ahead of another creditor.

The bankruptcy court was faced with the six causes of action described above. For reasons known only to the bankruptcy court, the bankruptcy court separated out the cross-claim by Alkhaseh against John Wood to be lifted from the stay and remanded to the circuit court to determine how much money John owed Alkhaseh. Regardless of the finality of other aspects of the circuit court litigation, the bankruptcy court separated out Alkhaseh's cross-claim against John so that the circuit court could determine that debt. This is perfectly in line with the premise that, to be final, an order must not only decide the rights of the parties, but also put the court's directive into execution, *ending the litigation or a separable part of it.* Here, the parties are John Wood and Alkhaseh. The circuit court's order decided the rights of John Wood vis-à-vis Alkhaseh to the tune of a $747,424.35 judgment. And the court's order put the court's directive into execution, ending a separable part of the litigation. The separable part of it was Alkhaseh's cross-claim for nonpayment on the promissory note and breach of the transfer agreement, which was the only separable part of the multifaceted circuit court litigation that was lifted from the stay. To that end, the Alkhaseh's judgment in the amount of $747,424.35 is a final and appealable order.

The supreme court has stated that the "test of finality and appealability of an order is whether the order puts the court's directive into execution, ending the litigation or a separable part of it." *Villines v. Harris*, 362 Ark. 393, 397, 208 S.W.3d 763, 766 (2005). However, *when the order appealed from reflects that further proceedings are pending*, which do not involve merely collateral matters, *the order is not final. Id.* Under the particular circumstances of this case, where the circuit court was reinvested with limited jurisdiction for the sole

purpose of assessing the debt owed from John to Alkhaseh, I would conclude that no further proceedings are presently pending in circuit court for purposes of finality and John Wood's right to appeal from the amount of damages set by the circuit court. Furthermore, the often repeated "separable part of it" language must mean something, and under these circumstances and for the reasons explained herein, a separable part of this litigation has concluded for purposes of John's appeal from the damages award. Therefore, I would hold that we have jurisdiction of the judgment for damages against John and that we should reach the merits and issue a ruling.

HIXSON, J., joins.

*Eric Soller*, for separate appellants John Wood and Tara Capital, LLC.

*Brett D. Watson, Attorney at Law, PLLC*, by: *Brett D. Watson*, for separate appellant Holly Wood.

*William R. Mayo*, for separate appellee Ladimer Alkhaseh.

*Carla Wasson*, for separate appellee Dawn Hill Townhouse and Condominium Property Owners Association, Inc.